607 S.E.2d 772

STATE of West Virginia ex rel. CHEMTALL INCORPORATED, Ciba Specialty Chemicals Corporation, Cytec Industries, Inc., G.E. Betz, Inc., Hychem, Inc., Ondeo Nalco Company, Stockhausen, Inc., Zinkan Enterprises, Inc., John Doe Manufacturing and/or Distributing Company, John Ceslovnik, Robert McKinley, Eulis Daniels, John Doe Company Representatives for Chemtall Incorporated, Ciba Specialty Chemical Corporation, Cytec Industries, Inc., G.E. Betz, Inc., Hychem, Inc., Ondeo Nalco Company, Stockhausen, Inc., Zinkan Enterprises, Inc., Petitioners,

v.

The Honorable John T. MADDEN, Judge of the Circuit Court of Marshall County; and All Plaintiffs in Stern, et al. v. Chemtall, Inc., et al., Civil Action No. 03–C–49M, Respondents

No. 31743.

Supreme Court of Appeals of West Virginia.

Submitted: Sept. 1, 2004.

Filed: Dec. 2, 2004.

Landers P. Bonenberger, Esq., Jeffrey A. Holmstrand, Esq., McDermott & Bonenberger, PLLC, Wheeling, for Chemtall Incorporated.

David K. Hendrickson, Esq., Hendrickson & Long, PLLC, Charleston, for GE Betz, Inc.

Joseph W. Selep, Esq., Zimmer Kunz, Pittsburgh, PA, for Hychem, Inc.

Heather Heiskell Jones, Esq., Andrew P. Arbogast, Esq., Spilman Thomas & Battle, PLLC, Charleston, for Cytec Industries, Inc.

Denise D. Klug, Esq., Thorp Reed & Armstrong, LLP, Wheeling, for Eulis Daniels, et al.

Harry G. Shaffer, III, Esq., Shaffer & Shaffer, PLLC, Madison, for Ciba Specialty Chemicals Corp.

Charles M. Love, Esq., Bowles Rice McDavid Graff & Love, Charleston, for Stockhausen, Inc.

Robert P. Martin, Esq., Todd M. Sponseller, Esq., Campbell, Woods, Bagley, Emerson, McNeer & Herndon, PLLC, Charleston, for Zinkan Enterprises.

Herman D. Lantz, Esq., Prosecuting Attorney, Moundsville, R. Dean Hartley, Esq., J. Zachary Zatezalo, Esq., Hartley & O'Brien, PLLC, Wheeling, E. William Harvitt, Esq., Harvitt & Schwartz. LC, Charleston, Bradley Oldaker, Esq., Wilson & Bailey, PLLC, Weston, for Respondents.

Fred Adkins, Esq., Marc E. Williams, Esq., Robert L. Massie, Esq., J. David Bolen, Esq., Alexander C. Ward, Esq., Huddleston Bolen, LLP, for Amicus Curiae Defense Trial Counsel of WV.

Kenneth S. Geller, Esq., Miriam R. Nemetz, Esq., Carl J. Summers, Esq., Mayer, Brown, Rowe & Maw, LLP, S. Jane Anderson, Esq., Dickie, McCamey & Chilcote, PC, Hugh F. Young, Esq., for Amicus Curiae Product Liability Advisory Council, Inc.

Victor E. Schwartz, Esq., Leah Lorber, Esq., Emily J. Laird, Esq., Shook, Hardy & Bacon, LLP, Elliot G. Hicks, Esq., Hawkins & Parnell, LLP, for Amici Curiae West Virginia Manufacturers Assoc.; National Assoc. of Manufacturers; Chamber of Commerce of the U.S.; American Chemistry Council; Coalition for Litigation Justice, Inc.; and Property Casualty Insurers Assoc. of America.

Grant Crandall, Esq., for Amicus Curiae United Mine Workers of America.

MAYNARD, Chief Justice.

Petitioners, eight corporations who have manufactured, distributed, and/or sold polyacrylamide to coal preparation plants, seek relief through prohibition from the September 26, 2003, order of the Circuit Court of Marshall County that certified a seven-state class action for medical monitoring and punitive damages arising out of the alleged exposure to polyacrylamide of Respondents who are coal preparation plant workers and the offspring of such workers. For the reasons set forth below, we grant a writ of prohibition as moulded.

## I.

## FACTS

Respondents and plaintiffs below are representative coal preparation plant workers

who allegedly have been exposed to residual acrylamide monomer in polyacrylamide. Petitioners and defendants below are the manufacturers, distributors, and representatives of polyacrylamide. On March 5, 2003, Respondents William K. Stern, Leonard A. Snyder, Michael Caputo, Terry Tucker, Michael E. Romada, Rodney Ferrell, William Thomas Adkins, II, Jonathan Paul Spencer, and John Doe filed a class action complaint in the Circuit Court of Marshall County on behalf of a class consisting of themselves and all other persons who have had inhalation, ingestion and/or dermal exposure to acrylamide while working in coal preparation plants in West Virginia, Illinois, Indiana, Ohio, Pennsylvania, Tennessee, and Virginia, as well as the offspring of those workers. The complaint was filed against Petitioners Chemtall Inc., a Georgia corporation; CIBA Specialty Chemicals Corporation, a Delaware corporation and successor in interest to Allied Colloids, Inc.; Cytec Industries, Inc., a Delaware corporation and successor in interest to American Cyanamid; G.E. Betz, Inc., a Pennsylvania corporation and successor in interest to Betzdearborn, Inc.; Hychem, Inc., a Florida corporation; Ondeo Nalco Company, a Delaware corporation; Stockhausen, Inc., a North Carolina corporation; Zinkan Enterprises, Inc., an Ohio corporation and successor in interest to O'Brien Industries, Inc.; and John Doe Manufacturing and Distributing Company.

In their complaint, Respondents aver that Petitioners manufactured, supplied, re-sold and/or distributed polyacrylamide for use in coal preparation plants in West Virginia and other states. Respondents explain that polyacrylamide is a flocculant which is continually added to the water used to wash coal so that the water can be recycled. According to Respondents, although polyacrylamide is nontoxic, it contains acrylamide monomer, a toxic which has been linked to neurologic and reproductive injuries and disease including certain types of cancer.

All of the representative plaintiffs either worked in a coal preparation facility in West Virginia or are the children of such workers.[1] The proposed class consists of all persons who have worked in coal preparation plants in West Virginia, Illinois, Indiana, Ohio, Pennsylvania, Tennessee, and Virginia who have had significant inhalation, ingestion and/or dermal exposure to polyacrylamide flocculants with residual acrylamide monomer and who are at significantly increased risk for sensory or autonomic nervous system deficits, various types of cancers, and genetic abnormalities and/or genetic diseases.[2] The proposed class also consists of the offspring of these persons who are at increased risk of developing genetic abnormalities and diseases. Respondents allege causes of action for strict liability, medical monitoring, and punitive damages.

By order of September 26, 2003, the circuit court granted Respondents' motion for class certification under West Virginia Rules of Civil Procedure 23(b)(2) and 23(b)(3), and certified the classes of:

> [A]ll persons who have worked in coal preparation plants in West Virginia, Illinois, Indiana, Ohio, Pennsylvania, Tennessee and Virginia, who have had significant inhalation, ingestion and/or dermal exposure to polyacrylamide flocculants with residual acrylamide monomer and who are at significantly increased risk for sensory or autonomic nervous system deficits ... cancer ... genetic abnormalities and/or genetic diseases ... as a result of the exposure; [and]

> [T]he offspring of persons who have worked in coal preparation plants in West Virginia, Illinois, Indiana, Ohio, Pennsylvania, Tennessee and Virginia, who have had significant inhalation, ingestion and/or dermal exposure to polyacrylamide flocculants with residual acrylamide monomer and who are at increased risk of genetic diseases and/or reproductive problems.

1. One Plaintiff is listed in the complaint as "John Doe ... a person not yet known who is/was significantly exposed to polyacrylamide flocculant containing acrylamide monomer in a coal preparation plant and who is representative of persons" who have worked in coal preparation plants in West Virginia, Illinois, Indiana, Ohio, Pennsylvania, Tennessee, and Virginia, have had significant exposure to polyacrylamide flocculant

2. According to Respondents, the proposed class is anticipated to consist of thousands of members.

with residual acrylamide monomer and who are at an increased risk for developing genetic abnormalities and/or genetic diseases ... as a result of the exposure.

According to the circuit court's order, the class is to proceed as a medical monitoring class action as to all issues relating to Petitioners' liability, Respondents' claims for equitable and injunctive relief, and Petitioners' liability for punitive damages. After the circuit court entered its September 26, 2003, order, Respondents requested to proceed only under Rule 23(b)(2), and the circuit court granted the request. On April 13, 2004, Petitioners filed their petition for a writ of prohibition and/or mandamus with this Court in which they challenge the class certification.

## II.

### STANDARD OF REVIEW

■ As noted above, the petition herein is brought in prohibition and/or mandamus. We have previously recognized that "[w]rits of prohibition offer a procedure ... preferable to an appeal for challenging an improvident award of class standing." *McFoy v. Amerigas, Inc.*, 170 W.Va. 526, 532, 295 S.E.2d 16, 22 (1982). Accordingly, we will treat the petition as one in prohibition.

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impres-

sion. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). We will now consider the circuit court's class certification order in light of this standard.

## III.

### DISCUSSION

At the outset, it is important to note that Petitioners challenge only the circuit court's ruling certifying a class covering the six states outside of West Virginia, and focus only on alleged due process infirmities in the circuit court's class certification order.[3] In regards to this out-of-state class, Petitioners first complain that the circuit court's order indicates that it will apply West Virginia law to the claims of the out-of-state class members. According to Petitioners, to do so would result in due process violations of the rights of both Petitioners and Respondents. Specifically, Petitioners assert that they improperly will be subjected to claims in West Virginia that would not be cognizable in the states where they arose. They also aver that absent out-of-state class members will have incorrect legal rules applied to their claims. Respondents, on the other hand, deny Petitioners' assertion that the circuit court intends to apply West Virginia law to out-of-state class members and assert rather that nowhere in its certification order does the circuit court indicate that it will apply West Virginia law to out-of-state claims.

■ After reviewing the circuit court's order, we agree with Petitioners that the circuit court failed to properly analyze the choice of law issue in concluding merely that "the laws of the applicable states are not 'materially' different so as to make this class unmanageable." Of initial relevance to this issue is the fact that "[i]n general, this State

---

**3.** Petitioners reserve other substantive challenges to the West Virginia class which are not addressed in this case, including the propriety of punitive damages and the form of the class.

adheres to the conflicts of law doctrine of *lex loci delicti."* Syllabus Point 1, *Paul v. National Life,* 177 W.Va. 427, 352 S.E.2d 550 (1986). "[T]hat is, the substantive rights between the parties are determined by the law of the place of injury." *Vest v. St. Albans Psychiatric Hosp.,* 182 W.Va. 228, 229, 387 S.E.2d 282, 283 (1989) (citation omitted). Therefore, under this doctrine, a West Virginia court must apply the substantive laws of Ohio, Illinois, Indiana, Pennsylvania, Tennessee, and Virginia to those class members whose exposure to acrylamide allegedly occurred in those states.

■ Further, Petitioners contend that application of West Virginia substantive law to proposed class members whose alleged exposure occurred in other states violates constitutional due process principles. We agree with Petitioners that this issue is governed by the Supreme Court case of *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). In *Shutts,* Petitioner was a Delaware corporation which had its principal place of business in Oklahoma. During the 1970's it produced or purchased natural gas from leased land located in 11 different states, and sold most of the gas in interstate commerce. Respondents were 28,-000 of the royalty owners possessing rights to the leases from which petitioner produced gas. They resided in all 50 states, the District of Columbia, and several foreign countries. Respondents brought a class action against petitioner in a Kansas state court seeking to recover interest on royalty payments which had been delayed by petitioner. The Kansas court applied Kansas contract and equity law to every claim, despite the fact that over 99% of the gas leases and 97% of the plaintiffs in the case had no apparent connection to the State of Kansas except for the lawsuit, and found petitioner liable for interest on the suspended royalties. Petitioner contended that total application of Kansas substantive law violated the constitutional limitations on choice of law mandated by the Full Faith and Credit Clause of the Federal Constitution, Article IV, § 1.

The Supreme Court explained that "[w]e must first determine whether Kansas law conflicts in any material way with any other law which could apply. There can be no injury in applying Kansas law if it is not in conflict with that of any other jurisdiction connected to this suit." *Shutts,* 472 U.S. at 816, 105 S.Ct. at 2976. After determining that there were actual conflicts between Kansas law and the laws of the other states, the Court explained:

Kansas must have a "significant contact or significant aggregation of contacts" to the claims asserted by each member of the plaintiff class, contacts "creating state interests," in order to ensure that the choice of Kansas law is not arbitrary or unfair. *Allstate [Ins. Co. v. Hague* ]; 449 U.S.[302], at 312–313[,] [101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981) ]. Given Kansas' lack of "interest" in claims unrelated to that State, and the substantive conflict with jurisdictions such as Texas, we conclude that application of Kansas law to every claim in this case is sufficiently arbitrary and unfair as to exceed constitutional limits.

When considering fairness in this context, an important element is the expectation of the parties. See *Allstate, supra,* at 333, [101 S.Ct. at 651] (opinion POWELL, J.). There is no indication that when the leases involving land and royalty owners outside of Kansas were executed, the parties had any idea that Kansas law would control. Neither the Due Process Clause nor the Full Faith and Credit Clause requires Kansas "to substitute for its own [laws], applicable to persons and events within it, the conflicting statute of another state," *Pacific Employers Ins. Co. v. Industrial Accident Comm'n,* 306 U.S. 493, 502[,] [59 S.Ct. 629, 633, 83 L.Ed. 940 (1939) ], but Kansas "may not abrogate the rights of parties beyond its borders having no relation to anything done or to be done within them." *Home Ins. Co. v. Dick, supra,* [281 U.S. 397, 410, 50 S.Ct. 338, 342, 74 L.Ed. 926 (1930) ].

*Shutts,* 472 U.S. at 821–822, 105 S.Ct. at 2979–2980.

Applying *Shutts* to the instant case, even if West Virginia were a *lex fori* state, the circuit court would be bound to compare West Virginia law on strict liability, medical

monitoring, punitive damages, and statutes of limitation with the applicable laws of the other states herein to determine whether West Virginia law conflicts in any material way with any other law which would apply. Although the circuit court concluded that "the laws of the applicable states are not 'materially' different so as to make this class unmanageable," this determination is inadequate because it was made without conducting a thorough analysis and absent detailed and specific findings to support it. *See* discussion *infra.* If there is no material conflict, there would be no constitutional injury in applying West Virginia law. If there are material conflicts, constitutional full faith and credit and due process principles prevent West Virginia from applying its own substantive law to out-of-state class members unless it has "a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Shutts*, 472 U.S. at 818, 105 S.Ct. at 2978 (citation omitted). Our review of the circuit court's order indicates that the circuit court committed clear error in failing to consider West Virginia's conflict of law doctrine and in failing to conduct a meaningful analysis of variations in the laws of the several states included in the proposed class action.

Petitioners next argue that the significant differences among the seven states in which the class members were allegedly injured prevent the class from meeting the prerequisites of commonality, typicality, and adequate representation set forth in Rule 23(a) of the West Virginia Rules of Civil Procedure. Respondents reply that the circuit court carefully analyzed the laws of the various states and concluded in its discretion that it could effectively manage the class despite any differences in the applicable states' laws.

 As set forth above, the proposed class was certified under Rule 23(b)(2) of the West Virginia Rules of Civil Procedure. According to Rule 23(a):

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule (b)(2) provides:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relieve [sic] or corresponding declaratory relief with respect to the class as a whole[.]

This Court's definitive case on the certification of class actions and the application of Rule 23 is *In re West Virginia Rezulin Litigation,* 214 W.Va. 52, 585 S.E.2d 52 (2003), in which we discussed at length each of the prerequisites listed in Rule 23(a). Concerning the "commonality" requirement of Rule 23(a), we held:

> The "commonality" requirement of Rule 23(a)(2) of the *West Virginia Rules of Civil Procedure* [1998] requires that the party seeking class certification show that "there are questions of law or fact common to the class." A common nucleus of operative fact or law is usually enough to satisfy the commonality requirement. The threshold of "commonality" is not high, and requires only that the resolution of common questions affect [sic] all or a substantial number of the class members.

Syllabus Point 11, *In re West Virginia Rezulin Litigation.* We further explained that,

> The "typicality" requirement of Rule 23(a)(3) of the *West Virginia Rules of Civil Procedure* [1998] requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." A representative party's claim or defense is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. Rule 23(a)(3) only requires that the class representatives' claims be typical of the other class mem-

bers' claims, not that the claims be identical. When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment.

Syllabus Point 12, *id.* Finally, as to "adequacy of representation," we stated:

The "adequacy of representation" requirement of Rule 23(a)(4) of the *West Virginia Rules of Civil Procedure* [1998] requires that the party seeking class action status show that the "representative parties will fairly and adequately represent the interests of the class." First, the adequacy of representation inquiry tests the qualifications of the attorneys to represent the class. Second, it serves to uncover conflicts of interest between the named parties and the class they seek to represent.

Syllabus Point 13, *id.*

■■■ The burden of establishing the existence of these requirements is upon the party or parties seeking class certification. Our law provides that "[t]he party who seeks to establish the propriety of a class action has the burden of proving that the prerequisites of Rule 23 of the West Virginia Rules of Civil Procedure have been satisfied." Syllabus Point 6, *Jefferson Cty. Bd. of Educ. v. Jefferson Cty. Educ. Ass'n*, 183 W.Va. 15, 393 S.E.2d 653 (1990). Thus, Respondents have the burden of proving the propriety of their proposed class action.

■■■■ Concerning the circuit court's certification of a class, this Court has recognized that,

Before certifying a class under Rule 23 of the *West Virginia Rules of Civil Procedure* [1998], a circuit court must determine that the party seeking class certification has satisfied all four prerequisites contained in Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and has satisfied one of the three subdivisions of Rule 23(b). As long as these prerequisites to class certification are met, a case should be allowed to proceed on behalf of the class proposed by the party.

Syllabus Point 8, *In re West Virginia Rezulin Litigation.* It has been said that "[a]lthough Rule 23 is silent on the issue, class certification is embodied in an order by the certifying court. This order should be detailed and specific in showing the rule basis for the certification and the determinative facts supporting the legal conclusions." Franklin D. Cleckley, Robin J. Davis & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure,* § 23(c)(1), p. 473 (2002). Generally, the rule in federal courts, as stated by the United States Supreme Court in *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982), is that a "class action ... may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *See also, Gariety v. Grant Thornton, LLP,* 368 F.3d 356, 365 (4th Cir.2004) (*quoting* rule in *Falcon* ); *Livingston v. Associates Finance, Inc.,* 339 F.3d 553, 558 (7th Cir.2003) (stating that "[c]lass certification requires a rigorous investigation into the propriety of proceeding as a class, and a decision to certify a class should not be made based solely on the arguments of one party" (citations omitted)); *Bell Atlantic Corp. v. AT&T Corp.,* 339 F.3d 294, 301 (5th Cir.2003) (noting that "the district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class" (internal quotation marks and citation omitted)); *Alkire v. Irving,* 330 F.3d 802, 820 (6th Cir. 2003) (*quoting Falcon* ); *Smilow v. Southwestern Bell Mobile Systems, Inc.,* 323 F.3d 32, 38 (1st Cir.2003) (*citing Falcon* ); *In re Visa Check/MasterMoney Antitrust Litigation,* 280 F.3d 124, 135 (2nd Cir.2001), *cert. denied by Visa U.S.A. Inc. v. Wal–Mart Stores, Inc.,* 536 U.S. 917, 122 S.Ct. 2382, 153 L.Ed.2d 201 (2002) (stating that "a trial court must conduct a rigorous analysis to ensure that the prerequisites of Rule 23 have been satisfied before certifying a class" (internal quotation marks and citation omitted)); *Gilchrist v. Bolger,* 733 F.2d 1551, 1555 (11th Cir.1984) (*quoting Falcon* ); *Bishop v. Committee on Professional Ethics, Etc.,* 686 F.2d 1278, 1287 (8th Cir.1982) (recognizing that "a class action may properly be certified only 'if the trial court is satisfied, after rigorous

analysis, that the prerequisites of Rule 23(a) have been satisfied'" (*quoting Falcon*)); *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir.1983) (*citing Falcon*). In light of the above, we now hold that a class action may only be certified if the trial court is satisfied, after a thorough analysis, that the prerequisites of Rule 23(a) of the West Virginia Rules of Civil Procedure have been satisfied. Further, the class certification order should be detailed and specific in showing the rule basis for the certification and the relevant facts supporting the legal conclusions.

■ Again, this Court's review of the circuit court's September 26, 2003, class certification order, indicates that the circuit court clearly erred in failing to conduct a thorough analysis and in failing to set forth detailed and specific findings to support the conclusion that the Respondents satisfied the requirements of Rule 23(a). In the portion of the circuit court's order that specifically discusses the four requirements of Rule 23(a), the circuit court summarized the arguments for and against certification made by the parties, recited the applicable law, and concluded, concerning the requirement of commonality, that "[b]ased upon the foregoing, this Court finds that there are questions of fact and law common to the classes." The conclusory treatment is afforded the "adequacy of representation" requirement in which the court concluded,

> that all class members share a common interest in establishing the liability of Defendants concerning the defective nature of polyacrylamide flocculants and seek identical relief by way of a court supervised medical monitoring fund. Further, the Court finds that the representative Plaintiffs' interests are not in conflict with the proposed classes and that Plaintiffs' attorneys are adequately qualified, experienced and generally able to conduct the litigation. Therefore, the "adequacy" requirement is met.

Finally, in regards to the requirement of typicality, the circuit court makes the same type of summary finding and opines that "[t]he Court does not agree with Defendants' position and finds that Plaintiffs' claims are typical of the claims of the Classes, as they are predicated on the same theories and arise out of the same course of conduct by Defendants." In light of the above, this Court finds that the circuit court's failure to conduct a thorough analysis and make specific and detailed findings on whether the requirements of Rule 23(a) were met amounts to clear error.

■ Particularly troubling to this Court is the circuit court's lack of analysis of the typicality requirement as it relates to the medical monitoring cause of action. Respondents assert, and the circuit court's order does not dispute, that some of the proposed class members reside in states that do not recognize a cause of action for medical monitoring. For example, in the portion of the circuit court's order titled "Manageability— Uniformity of Laws," the circuit court very briefly discussed the laws of strict liability, medical monitoring, statute of limitations, and punitive damages in the various states included in the proposed class action. Concerning medical monitoring, the circuit court stated:

> Plaintiffs [sic] cause of action seeks medical monitoring. Plaintiffs argue that "of those states involved in this action, all but Indiana, Tennessee and Virginia recognize a cause of action for medical monitoring." Defendants do not disagree with this statement but argue that this Court is "without guidance to predict" how Tennessee, Indiana and Virginia would rule on the issue and that the "elements required to sustain a claim in those jurisdictions that have addressed the issue, significant differences exist."
>
> After reviewing the various states [sic] laws cited by the parties, this Court does not believe that any differences that may exist would make the class unmanageable. (Citations omitted).

As stated above, typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." In the instant case the representative parties were all allegedly exposed to acrylamide in West Virginia which means that West Virginia law on medical monitoring should be applied to the representative plain-

tiffs. Respondents therefore must show, and the circuit court must find, that the West Virginia medical monitoring claims are typical of the medical monitoring claims of the proposed class members who were allegedly exposed in the other states. In other words, it must be shown, among other things, *that their claims are based on the same legal theory.* Obviously, the representative plaintiffs' claims for medical monitoring cannot be typical of the claims of the proposed class members who reside in states that do not recognize such a cause of action. To be clear, proposed class members who were allegedly exposed to acrylamide in a state which does not recognize or which has not yet decided whether to adopt a cause of action for medical monitoring cannot be included in Respondents' proposed class in which medical monitoring is sought.

■■■■ In addition, Petitioners aver that even among those states that have expressly recognized medical monitoring, significant differences exist. In order for the representative plaintiffs who were allegedly exposed in West Virginia to show that they could represent the proposed class members alleged exposed in the other states, they must show that the other states recognize medical monitoring causes of action which are reasonably co-extensive with the medical monitoring causes of action in West Virginia. This is due to the fact that the typicality requirement requires the representative plaintiffs to establish "the bulk of the elements of each class member's claim when they prove their own claims." *Schmitt v. U.S.*, 203 F.R.D. 387, 402 (S.D.Ind.2001) quoting *Allen v. City of Chicago*, 828 F.Supp. 543, 553 (N.D.Ill. 1993). Therefore, it is necessary for the circuit court, in a detailed and specific fashion, to compare West Virginia law on medical monitoring with the laws of the other states where proposed class members were allegedly exposed in order to determine whether variations exist that preclude certification.

■■■■ We further find that the circuit court committed clear error in its conclusion that no applicable statute of limitations has begun to run in this case. Specifically, the circuit court found as follows:

The Defendants argue that the applicable states employ different statutes of limitations. After review of Defendants [sic] arguments, this Court finds that the statute of limitations laws of the varying states are not applicable to this action. Since Plaintiffs have not suffered injury for exposure to the residual acrylamide monomer in the polyacrylamide flocculant, no applicable statute of limitations has begun to run. Therefore, the application of statutes of limitations is not necessary. (Citation omitted).

A cause of action for medical monitoring lies in tort. According to W.Va.Code § 55–2–12 (1959), the statute of limitation applicable to tort actions in West Virginia, "[e]very personal action for which no limitation is otherwise prescribed shall be brought … within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries[.]" This Court has held that "[g]enerally, a cause of action accrues (i.e., the statute of limitations begins to run) when a tort occurs; under 'the discovery rule,' the statute of limitations is tolled until a claimant knows or by reasonable diligence should know of his claim." Syllabus Point 1, *Cart v. Marcum*, 188 W.Va. 241, 423 S.E.2d 644 (1992). Further,

In products liability cases, the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence should know, (1) that he has been injured, (2) the identity of the maker of the product, and (3) that the product had a causal relation to his injury.

Syllabus Point 1, *Hickman v. Grover*, 178 W.Va. 249, 358 S.E.2d 810 (1987).

■■■■ The circuit court apparently reasoned that no statute of limitation applies to a medical monitoring claim because the cause of action has not yet accrued, *i.e.*, there is not yet an injury. This is incorrect. "The 'injury' that underlies a claim for medical monitoring-just as with any other cause of action sounding in tort-is 'the invasion of any legally protected interest.'" *Bower v. Westinghouse Electric Corp.*, 206 W.Va. 133, 139, 522 S.E.2d 424, 430 (1999) quoting *Restatement (Second) of Torts* § 7(1) (1964). The specific invasion of a legally protected interest in a

medical monitoring claims consists of "a significantly increased risk of contracting a particular disease relative to what would be the case in the absence of exposure." 206 W.Va. at 142, 522 S.E.2d at 433. Thus, Respondents herein have, in fact, alleged an injury. Accordingly, we now hold that a medical monitoring cause of action accrues when a plaintiff knows, or by the exercise of reasonable diligence should know, that he or she has a significantly increased risk of contracting a particular disease due to significant exposure to a proven hazardous substance and the identity of the party that caused or contributed to the plaintiff's exposure to the hazardous substance.

■ Finally, we find that the circuit court clearly erred by ruling that to the extent there are significant differences in the laws of the various states, the differences are manageable by the creation of subclasses. According to Rule of Civil Procedure 23(c)(4), "[w]hen appropriate . . . a class may be divided into subclasses and each subclass treated as a`class, and the provisions of this rules [sic] shall then be construed and applied accordingly." However, "[w]hen subclasses are requested by the moving party or ordered by the court, it is generally settled that each subclass must independently satisfy class action criteria[.]" Alba Conte, Esq. and Herbert B. Newberg, Esq., *Newberg on Class Actions*, § 3:9, pp. 267–268 (4th ed.2002) (footnote omitted). *See also, Johnson v. American Credit Co. of Georgia*, 581 F.2d 526, 532 (5th Cir.1978) (declaring that "[a] subclass . . . must independently meet all of rule 23's requirements for maintenance of a class action" citing 7A C. Wright & A. Miller, *Federal Practice and Procedure*: Civil § 1790, at 191–92 (1972)); *Bates v. United Parcel Service*, 204 F.R.D. 440, 443 (N.D.Cal.2001) stating that "[i]f the court divides the class into subclasses under Rule 23(c)(4)(B), then 'each subclass must independently meet the requirements for the maintenance of a class action'" (citation omitted); *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir.1981) (recognizing that "each subclass must independently meet the requirements of Rule 23 for the maintenance of a class action").

In the instant case, dividing the proposed class into subclasses based on each state in which plaintiffs were allegedly injured would not meet the requirements of Rule 23(a) because the subclasses, other than the West Virginia subclass, would have no representative plaintiffs. *See Burka v. New York City Transit Authority*, 110 F.R.D. 595, 601 (S.D.N.Y.1986) (holding that "[a] final prerequisite to certification of any subclass is a finding that the subclass representative is a member of the subclass that he seeks to represent" (citation omitted)). Said another way, because all of the representative plaintiffs were allegedly exposed to acrylamide in West Virginia, they could represent only a West Virginia subclass. Accordingly, in light of the fact that all of the representative plaintiffs allege exposure in West Virginia, it would be improper to divide the proposed class into subclasses based on each state of injury because all of the subclasses, with the exception of the West Virginia subclass, would be without representative plaintiffs.

In sum, for the reasons stated above, we find that the circuit court clearly erred in failing to conduct the proper analysis in determining what law to apply to the putative class members; in failing to conduct a thorough analysis and failing to make detailed and specific findings in determining whether the Rule 23(a) requirements are met; in ruling that no statute of limitation is applicable to Respondents' medical monitoring cause of action; and in finding that, in the event significant variations occur in the laws of the several states, dividing the proposed class into subclasses would be proper. Therefore, we grant relief to Petitioners insofar as we vacate the circuit court's September 26, 2003, certification order.

However, we deny Petitioners' requested relief to the extent that we do not order that the action below proceed as a class action only as to those coal preparation workers and their offspring who allegedly were exposed to Petitioners' products in West Virginia. In other words, we are unable to conclude, on the order and record before us, that a multistate action for medical monitoring, including at least some of the other states in which proposed class members were injured, would

not meet the Rule 23(a) requirements. Perhaps, upon reconsideration of this matter, Respondents may prove, and the circuit court may find, after conducting a thorough analysis and making specific and detailed findings, that a multi-state class action for medical monitoring due to exposure to acrylamide meets the requirements of West Virginia Rule of Civil Procedure 23(a).

## IV.

### CONCLUSION

For the foregoing reasons we grant Petitioners' requested relief to the extent that we vacate the circuit court's September 26, 2003, class certification order. The circuit court is authorized to proceed with necessary hearings, including consideration of further certification of appropriate classes and subclasses, and the parties are not precluded from making appropriate amendments to the pleadings including the addition of necessary parties where appropriate. We deny Petitioners' requested relief to the extent that we decline to order that the action below proceed only as to the West Virginia plaintiffs. Therefore, we grant Petitioners a writ of prohibition as moulded.

Writ granted as moulded.

Justice DAVIS, deeming herself disqualified, did not participate in the decision in this case.

Judge PRATT, sitting by special assignment.

Justice STARCHER concurs and reserves the right to file a concurring opinion.

Justice MCGRAW concurs, in part, dissents, in part, and reserves the right to file a separate opinion.

STARCHER, J., concurring.

I do not envy the circuit judge's position in the instant case. As I recently said:

Class actions are, in a word, intimidating. They are the long-distance marathons of the legal world. They are expensive, time-consuming, and difficult to manage.

They are also an indispensable tool for litigants, plaintiffs and defendants alike, to "secure the just, speedy, and inexpensive determination" of many actions. Rule 1, *West Virginia Rules of Civil Procedure. Gulas v. Infocision Management Corp.,* 215 W.Va. 225, 230, 599 S.E.2d 648, 653 (2004) (*per curiam*) (Starcher, J., concurring). In the average "toxic tort" personal injury lawsuit, the plaintiff will claim some injury from a toxic chemical made by the defendant; the defendant's response is usually to try and focus the judge's and jury's attention upon the "sins" of the plaintiff, to suggest the plaintiff's injuries are unique and entirely the result of the plaintiff's actions. But a class action lawsuit like the one at bar, by a group of plaintiffs who claim to have been harmed by the defendant's toxic chemical, places the limelight relentlessly upon the defendant. The malfeasance of the defendant becomes the sole focus. Because the plaintiffs' damages are concentrated in one lawsuit instead of spread out among dozens of smaller lawsuits in different jurisdictions, the press, the public, government regulators and corporate shareholders are more likely to take note of that malfeasance. This is, in large part, why corporate defendants despise class actions.

Defendants who have potentially harmed large groups of plaintiffs will, therefore, attack the formation of a class action by claiming—often misleadingly—the existence of high procedural hurdles that cannot be vaulted by the plaintiffs, long before the parties have collected and/or exchanged any discovery. For instance,

[T]he bigger the class, the greater the likelihood that the defendant will argue that there is no common problem across the system. . . .

Defendants attempting to avoid class certification will, almost exclusively, overwhelm a circuit judge with the differences between each class member's case. It is akin to a judge being asked to look at a forest of oak trees and being told the difference between each tree: each tree has a different height, a different color, a different number of leaves, a unique number of branches, a wide variation in the number and size of tree rings, and so on.

The test for the judge, though, is to step back and look at the similarities in class members. Step back and see the forest. No matter the number of branches or

leaves, a collection of oak trees has enough similarities to be called a "class" of oak trees.

*Id.*

In the instant case, the defendants argued that a "class action ... may only be certified if the trial court is satisfied, *after a rigorous analysis,* that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982) (emphasis added). As the majority opinion suggests, most federal courts have blithely accepted this argument and require a party seeking class action certification to endure a "rigorous" analysis of their class certification evidence by the trial court.

After carefully reading Rule 23 of our *Rules of Civil Procedure,* and reading the *Rules* as a whole, neither I nor my colleagues can find anything that requires a party to submit any motion to a "rigorous" analysis by a trial court. Use of the term "rigorous" suggests that a trial judge must exercise "harshness, rigidity, inflexibility," [1] or be "severely exact or accurate; ... stern ... hard, inflexible, stiff, unyielding." [2] Frankly, it is difficult to determine how a litigant could achieve a "just, speedy, and inexpensive" resolution of a dispute when the trial judge, usually at the initial, pre-trial stages of the case, is being harsh, inflexible, exacting and unyielding in considering the parties' motions.

Hence, the majority's opinion dispenses with grafting onto our analysis of Rule 23 class certification motions the "rigorous" requirement used by federal courts. Instead, we hold in Syllabus Point 8 that judges should do what they always do when considering a party's motion: be "thorough." A trial judge should look at any motion made under the *Rules of Civil Procedure* in a conscientious, careful, and methodical fashion. It is one thing to look at a class certification motion thoroughly and with "great care and completeness;" [3] it is quite another thing to look at a class certification motion harshly, inflexibly and unyieldingly as a pro-cedural roadblock to justice. The Court has wisely chosen the former, flexible term "thorough," and courts and litigants should in the future forever eschew the use of the word "rigorous" when talking about a motion under our *Rules of Civil Procedure.*

The record in this case suggests that the alternative to the certification of a class action—dozens if not thousands of individual trials by each plaintiff using nearly identical evidence—would likely overwhelm the limited resources of the court and the parties. Creativity and determination by a circuit judge are therefore key to the fair resolution of an action such as the one at bar, and I applaud the circuit judge's initiative in moving this case forward. The procedures available under Rule 23 of the *Rules of Civil Procedure* are very effective tools for reaching a just, speedy, and inexpensive determination of the issues raised by the parties. As the majority opinion suggests, the circuit judge in this case could always break this case up into subclasses, or certify or decertify certain classes, so long as the requirements of Rule 23 are met.

The issue that drove the majority's decision to issue a writ of prohibition in the instant case was our—and the parties'—inability to grasp (1) how the out-of-state plaintiffs' cases were connected to West Virginia, and (2) whether it would, in a constitutional sense, be fair to adjudicate their cases here. The Court's decision to issue a writ in this case does not preclude the circuit judge in the future from certifying a class or subclasses involving out-of-state plaintiffs; we simply need the judge to carefully analyze and explain why a plaintiff—who lived, worked, and was injured exclusively in a foreign jurisdiction—should be allowed or required to have their case heard by a West Virginia jury.

A corollary to this problem is a determination of the applicable law. I have personally seen this problem in the context of asbestos personal injury litigation. I was a trial judge in a border county, and often had to handle cases where a plaintiff lived in West Virginia,

---

**1.** *Oxford Desk Dictionary and Thesaurus* 689 (1997).

**2.** *Random House Webster's Unabridged Dictionary* 1657 (2d.Ed.1998).

**3.** "Thorough," *Oxford Desk Dictionary and Thesaurus* 834 (1997).

but worked and was injured in another state, or vice-versa. Sometimes the plaintiff was injured in several states including West Virginia, or was injured entirely in foreign states but brought suit in West Virginia because one of the defendants was a West Virginia company.

The circuit judge in this case must, at the outset, have a general, basic handle on the law of these foreign jurisdictions. This does *not* mean that the circuit judge must be prepared to draft jury instructions at the outset of the case. The majority's opinion simply holds that the judge must comprehend in a general sense whether or not the claims of the out-of-state plaintiffs are compatible with West Virginia law such that the claims of those plaintiffs could be fairly understood and adjudicated by a jury.[4]

I therefore respectfully concur.

---

**4.** For instance, if West Virginia required proof of some fact by a preponderance of the evidence, but another state required proof of the same fact by clear and convincing evidence, a jury could easily understand and adjudicate whether the evidence showed—by a preponderance of the evidence—that the fact existed in West Virginia, and showed—clearly and convincingly—that the same fact existed in the foreign state as well. Likewise, West Virginia allows a plaintiff to recover the costs of future medical monitoring that result from a defendant's misconduct; if the foreign state does or might similarly allow a plaintiff to recover those costs in a civil action, the circuit judge might allow the claims of both West Virginia and foreign plaintiffs to proceed together.