No. 19-1006 – *State ex rel. Surnaik Holdings of West Virginia, LLC v. Bedell*

**FILED**
**November 20, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Workman, Justice, dissenting:

For seventeen years, West Virginia's trial courts have been guided by this Court's seminal decision in *In re West Virginia Rezulin Litigation*, 214 W. Va. 52, 585 S.E.2d 52 (2003), and its progeny, in deciding class certification issues arising under Rule 23 of the West Virginia Rules of Civil Procedure. And for seventeen years, the *Rezulin* analysis has guided our courts to fair, just, and equitable results in determining which cases are suitable for certification and which are not. Today, however, the Court announces that *Rezulin* "utilized a vague, all things considered test that does not give the circuit courts any real guidance," and determines, in a lengthy advisory opinion,[1] that henceforth we will be guided by "the federal courts' interpretation of its Rule 23(b)(3)." Then, in its rush to fix something that isn't broken, combined with its zeal to subordinate established West Virginia law to federal law, the majority has erected a bureaucratic mountain of fact-finding and legal analysis which a circuit court must climb prior to certifying a class, all for the benefit of corporate defendants, while completely ignoring the other side of the equation, that "[t]he class action device allows plaintiffs with individually small claims the opportunity for relief that would otherwise not be economically feasible, allowing them to collectively share the otherwise exorbitant costs of bringing and maintaining the lawsuit."

---

[1] *See* text *infra*.

*Salem Int'l Univ., LLC v. Bates*, 238 W. Va. 229, 237, 793 S.E.2d 879, 887 (2016) (Workman, J., concurring).

I.

I begin with the actual holding of this case: that "the circuit court has exceeded its legitimate powers by certifying the class while failing to undertake a thorough analysis in its determination of whether the class certification requirements of Rule 23 . . . were satisfied." I have no quarrel with the proposition that "[b]efore certifying a class under Rule 23 of the West Virginia Rules of Civil Procedure [1998], a circuit court must determine that the party seeking class certification has satisfied all four prerequisites contained in Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – and has satisfied one of the three subdivisions of Rule 23(b)." Syl. Pt. 8, in part, *Rezulin,* 214 W. Va. at 56, 585 S.E.2d at 56. Additionally, I agree that in making this determination, the court is required to undertake a "thorough analysis," and that its failure to do so "amounts to clear error." *State ex rel. Chemtall Inc. v. Madden*, 216 W. Va. 443, 454, 607 S.E.2d 772, 783 (2004). I part company with the majority, however, in its conclusion that the experienced circuit court judge handling this litigation did not undertake a thorough analysis of the evidence and the governing law in crafting his decision. The court's certification order – 14 pages of findings of fact, conclusions of law, and a trial plan, plus 3 pages of appended material delineating the geographical area of the class – demonstrates that the court had a comprehensive understanding of the evidence and how it fit within the framework of a Rule 23 analysis. The only fault I can find in the order

2

– and it is a fault, not a fatal flaw -- is that the court did not organize all of its findings and conclusions under specific headings: numerosity, commonality, typicality, adequate representation, predominance, and superiority of the class action mechanism. Rather, it made succinct, but not merely conclusory, findings under those headings, and then discussed the application of law to the facts at length in the portion of its order styled "Conclusions of Law."[2]

Based upon the record before this Court, and on the factual findings and legal conclusions set forth in the circuit court's order, it is difficult to envision a case better suited for resolution pursuant to the mechanism set forth in Rule 23 of the West Virginia Rules of Civil Procedure. Respondent's complaint alleges that in the early morning hours of October 21, 2017, a warehouse in the 3800 block of Camden Avenue in Parkersburg, West Virginia, caught fire, and thereafter burned until October 29, 2017. The complaint further alleges that during this 8-day period of time, smoke and particulate matter from the fire and smoldering ruins constituted a nuisance and health hazard to residents and workers (in both private businesses and government offices) within an 8.5 mile radius of the warehouse. In the complaint and also in his deposition testimony, Respondent also alleges

---

[2] The majority does find the organization of the circuit court's analysis to be a fatal flaw, concluding that "[a]lthough the circuit court's order does contain a *bit* more analysis in the 'Conclusions of Law' section by intertwining the predominance and superiority requirements together, this discussion does not cure the defects of its initial analysis." This *bit* of analysis to which the majority sarcastically refers is 6 pages of findings and conclusions, supported by citations of numerous legal authorities.

that he and all other residents and workers suffered property damage in the form of smoke and particulates from the fire invading homes "at levels that interfered with the comfort, use, and enjoyment of their property," together with inchoate damages such as annoyance and inconvenience; and further that he and at least some other residents and workers suffered personal injuries as well. In summary, in this case we have a large number of plaintiffs (estimated to be 57,000), experiencing harm in different degrees,[3] arising from a single event which took place in a defined location over a short period of time.

In support of his motion for class certification, Respondent submitted expert testimony from three individuals whose credentials are not disputed. The first expert delineated the geographical boundary of the area allegedly impacted by the emission of smoke and particulate matter; specifically, the class area was defined as the area within

---

[3] In this regard, the circuit court wrote that that "[b]ecause any questions relate solely to the issues of damages, at the very least, the proposed class action should be certified on the issues of *liability* and *causation* under Rule 23(c)(4)." (Emphasis added.) Thus, all of Petitioner's complaints that 90% of the class suffering no damages at all – a highly misleading statement which reflects Petitioner's apparent belief that the only damages recoverable in this action would be for bodily injury and/or noticeable alterations to property – are, if not a complete red herring, certainly not a death blow to the maintenance of a class action. "'That class members may eventually have to make an individual showing of damages does not preclude class certification.'" *Rezulin*, 214 W. Va. at 72, 585 S.E.2d at 72 (citing *Smith v. Behr Process Corp.*, 54 P.3d 665, 675 (Wash. 2002)). Further, "[a] circuit court's consideration of a motion for class certification should not become a mini-trial on the merits of the parties' contentions[,]" *Rezulin*, 214 W. Va. at 63, 585 S.E.2d at 63, which is exactly what Petitioner seeks and what the majority has gifted it.

which individual would have had exposure within a 24-hour average of at least 3 micrograms per cubic meter of fine particles less than 2.5 microns in size. The second expert did disbursement modeling to draw the isopleths[4] within which individuals would have had exposure at this 3 micrograms per cubic meter level. Finally, the third expert, a physician, gave evidence tending to show that this level of exposure to particulate matter increased the risk of various health problems ranging in severity from discomfort to death.

Ultimately, the circuit court certified a class consisting of all residents and businesses within an 8.5 mile radius of Petitioner's warehouse. The court concluded that there were

> many common questions of law and fact, including to name only a few of the most important: questions concerning industry standards for fire protection systems; questions relating to what was stored in the warehouse; how the decision not to maintain the fire protection system [was] made; who made it; which of those chemicals burned; what the decomposition products of the waste chemicals was; the area of dispersion of smoke and particulate matter; and the potential for harm from contact, inhalation, or ingestion of the smoke and particulate matter.

The court also concluded that "[b]ecause any individual questions relate solely to the issues of damages, at the very least, the proposed class action should be certified on the issues of liability and causation under Rule 23(c)(4)."

---

[4] An isopleth is defined as a line on a map connecting points having equal incidence of a specified meteorological feature.

Reviewing the circuit court's common questions of law and fact, it is hard to fathom the majority's dismissive conclusion that the court's order is "woefully inadequate" to demonstrate that those common questions predominate. In a recent case, we affirmed the guidance set forth in *Rezulin* that "[i]n deciding predominance, the 'central question [is] whether "adjudication of the common issues in the particular suit has important and desirable advantages of judicial economy compared to all other issues, or when viewed by themselves." 2 *Newberg on Class Actions*, *4th Ed*., § 4.25 at 174.'" *State ex rel. U-Haul Co. of W. Va. v. Tabit*, No. 17-1052, 2018 WL 2304282, at *8 (W. Va. May 21, 2018) (memorandum decision) (citing *Rezulin*, 214 W. Va. at 72, 585 S.E.2d at 72)). We went on to explain that,

> [t]he predominance requirement does not demand that common issues be dispositive, or even determinative; it is not a comparison of the amount of court time needed to adjudicate common issues versus individual issues; nor is it a scale-balancing test of the number of issues suitable for either common or individual treatment. 2 *Newberg on Class Actions, 4th Ed*., § 4.25 at 169-173. Rather, '[a] single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions.' *Id*. at 172.

*U-Haul.,* 2018 WL 2304282, at *9 (citation omitted). In the instant case, can there be any serious question that the predominant issues are those enumerated by the circuit court? And as a corollary proposition, can there be any serious question that thereafter, the court has a "variety of procedural options under Rule 23(c) and (d), to reduce the burden of

resolving individual damage issues, including bifurcated trials, use of subclasses or masters, pilot or test cases with selected class members, or even class decertification after liability is determined[]"? *U-Haul.,* 2018 WL 2304282, at *9.[5]

Even more difficult to fathom is the majority's conclusion that the circuit court's finding with respect to superiority, Rule 23(b)(3), is "conclusory in that it listed cases where class certification was found to be appropriate in mass accident cases without giving any explanation as to why those particular cases fit the facts of this matter." Again, the majority is parsing the court's order paragraph by paragraph, without considering its findings and conclusions as an integrated whole. With respect to superiority, the court stressed the fact that "the damages suffered by most class members are too small to warrant the associated costs of pursuing such cases, such as basic filing fees, deposition fees, attorney time in processing, and expert witness fees." And again, inasmuch as the court certified a class only as to liability and causation – essentially, was Petitioner negligent or reckless, and did that negligence or recklessness cause the warehouse fire which belched smoke and particulates for 8 days over an 8.5 mile radius – I am hard pressed to come up with *any* rationale which could possibly support the conclusion that a better way to handle the matter would be to require anyone claiming to have suffered injury and damage to file an individual lawsuit. Even accepting Petitioner's claim that only 10% of those within the

---

[5] *See supra* note 3.

8.5 mile radius suffered actual harm,[6] the result would be 5,700 individual lawsuits – enough to force the judicial system to its knees, notwithstanding the $1,140,000.00 in filing fees that would be generated.

In summary, the majority's decision in this case exalts form over substance, and requires that a circuit court's order granting class certification must contain far more than the "detailed and specific showing" previously deemed sufficient. *E.g., State ex rel. Municipal Water Works v. Swope*, 242 W. Va. 258, 267-68, 835 S.E.2d 122, 131-32 (2019). Rather, the order will have to contain a level of claim-by-claim, issue-by-issue, defense-by-defense analysis somewhere between a blue book essay and a law review article in length. Here, where the class parameters have been so well defined by the testimony of expert witnesses, and the analysis of the circuit court is so clear and so evidently correct, one can only read the majority opinion as a result-driven attempt to steer the circuit court, on remand, in Getting to No.

---

[6] The majority follows Petitioner down this particular rabbit hole, criticizing the circuit court's finding that "owning or residing in a house that is invaded by noxious or harmful levels of smoke negligently released from a fire is a cognizable injury [to all class members]," by setting up a straw man argument as to whether the essential elements of the various causes of action alleged in the complaint "are capable of individualized or even generalized proof." This is a merits question more properly addressed on motion for summary judgment; a certification inquiry under Rule 23 does not require plaintiff to prove his or her case, only to establish that the issues fall within the framework established in subsections (a) and (b) of the rule.

## II.

Having expressed my disagreement with the majority's holding, I now turn to the lengthy advisory opinion[7] which precedes the relatively brief discussion of the actual issue in this case. Petitioner raised five issues in its brief: that common issues do not predominate in this case because only 10% of the class is likely to have been injured; that mass accident and toxic tort cases are inappropriate for class adjudication; that plaintiff cannot satisfy the certification requirements of standing and typicality because he concedes that he has not suffered any property damage; that the class members are not readily identifiable by reference to objective criteria; and that the circuit court failed to conduct a thorough analysis of the Rule 23 factors. In this latter regard, Petitioner's entire argument

---

[7] More than half of the majority's "Discussion" could be classified either as (a) dicta, (b) an advisory opinion, or (c) the use of a backhoe to dig a one inch hole. This Court has defined dicta as language "which, by definition, is . . . unnecessary to the decision in the case and therefore not precedential. *Black's Law Dictionary* 1100 (7th ed. 1999)." *State ex rel. Med. Assurance of W. Va., Inc. v. Recht*, 213 W. Va. 457, 471, 583 S.E.2d 80, 94 (2003). With respect to advisory opinions, we have held that "the requirement of a justiciable controversy and the prohibition against advisory opinions are two sides of the same coin. We explained this in Syllabus Point 2 of *Harshbarger v. Gainer* [184 W. Va. 656, 659, 403 S.E.2d 399, 402 (1991)] when we held that '[c]ourts are not constituted for the purpose of making advisory decrees or resolving academic disputes. The pleadings and evidence must present a claim of legal right asserted by one party and denied by the other[.]'" *State ex rel. Perdue v. McCuskey*, 242 W. Va. 474, 478, 836 S.E.2d 441, 445 (2019). I have chosen to refer to the scholarly exposition in this case as an advisory opinion, since the majority is quite clearly attempting to advise the circuit court with respect to how it should resolve an issue that has not actually been raised by anyone other than the majority: the sufficiency of the circuit court's order with respect to the question of predominance. *See* text *infra*.

was that the court's analysis of typicality and ascertainability[8] was insufficient, *not* its analysis of predominance. Although I believe that the first four of these issues are without merit, based on my review of the evidence contained in the appendix record, this is of no moment; the fact is that these issues all became moot when the majority decided the case on the ground that the circuit court's order was insufficient to demonstrate the "thorough analysis" required by our case law, and specifically with respect to the circuit court's findings of predominance and superiority.

In this regard, the majority could have cited the comprehensive discussion of predominance set forth in *Rezulin* and its progeny, and rested its decision thereon.

> 'A conclusion on the issue of predominance requires an evaluation of the legal issues and the proof needed to establish them. As a matter of efficient judicial administration, the goal is to save time and money for the parties and the pubic and to promise consistent decisions for people with similar claims.' *In the Matter of Cadillac V8-6-4 Class Action*, 93 N.J. 412, 430, 461 S.E.2d 736, 745 (1983). The predominance requirement is not a rigid test, but rather contemplates a review of many factors, the central question being whether 'adjudication of the common issues in the particular suit has important and desirable advantages of judicial economy

---

[8] Interestingly, this word is not found in either the text of Rule 23 or in any of this Court's class action cases. Rather, it is a formulation discussed in some federal cases, describing the unremarkable concept that a class and its members must be readily identifiable with reference to objective criteria, "without extensive and individualized fact-finding or 'mini-trials[.]'" *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592-93 (3rd Cir. 2012) (citation omitted). In the instant case, the testimony of Respondent's experts most certainly met any requirement of ascertainability. *See* text *supra*.

> compared to all other issues, or when viewed by themselves.'
> 2 *Newberg on Class Actions, 4ᵗʰ Ed*., § 4:25 at 174.

*Rezulin*, 214 W. Va. at 72, 585 S.E.2d at 72; *see also U-Haul*, 2018 WL 2304282, at *8

("In deciding predominance, the 'central question [is] whether 'adjudication of the

common issues in the particular suit has important and desirable advantages of judicial

economy compared to all other issues, or when viewed by themselves.'") (citation omitted).

Undaunted by the fact that Petitioner did not argue insufficiency of the circuit

court's analysis of predominance (it simply claimed that the court's decision was erroneous

because the existence or extent of individual damages would vary), or the fact that the issue

of the sufficiency of the court's analysis could easily be resolved under existing West

Virginia law, the majority devotes pages of text to what is termed a "general review" of

federal cases dealing with predominance. The majority notes with approval those cases

that require the lower court to perform a "rigorous analysis," or even a "*more* rigorous

analysis" of class certification motions, as opposed to this Court's "thorough analysis"

standard.[9]  (Emphasis added.) The majority further acknowledges the current trend in

---

[9] In his concurring opinion in *State ex rel. Chemtall Inc. v. Madden*, 216 W. Va. 443, 458, 607 S.E.2d 772, 787 (2004), then-Justice Starcher commented on the federal courts' seeming hostility toward class action lawsuits:

> In the instant case, the defendants argued that a 'class action . . . may only be certified if the trial court is satisfied, *after a rigorous analysis*, that the prerequisites of Rule 23(a) have been satisfied.' *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740

federal courts "toward heightening plaintiffs' burden . . . [which] has decidedly outpaced

concern over providing a mechanism for litigating low-value claims."[10] There is no

apparent reason given for the majority's clear preference for the anti-plaintiff position

espoused by the federal courts cited in its opinion; and whatever the reason, it seems clear

that the Court is signaling a retreat from what the United States Supreme Court once termed

West Virginia's "declar[ation of] independence from federal courts' interpretation of the

---

(1982) (emphasis added). As the majority opinion suggests, most federal courts have blithely accepted this argument and require a party seeking class action certification to endure a 'rigorous' analysis of their class certification evidence by the trial court.

After carefully reading Rule 23 of our *Rules of Civil Procedure*, and reading the *Rules* as a whole, neither I nor my colleagues can find anything that requires a party to submit any motion to a 'rigorous' analysis by the trial court. Use of the term 'rigorous' suggests that a trial judge must exercise 'harshness, rigidity, inflexibility,' or be 'severely exact or accurate; . . . stern . . . hard, inflexible, stiff, unyielding.' Frankly, it is difficult to determine how a litigant could achieve a 'just, speedy and inexpensive' resolution of a dispute when the trial judge, usually at the initial, pre-trial stages of the case, is being harsh, inflexible, exacting and unyielding in considering the parties' motions.

*Chemtall*, 216 W. Va. at 458, 607 S.E.2d at 787 (footnote omitted).

[10]Ellen Meriwether, *The Fiftieth Anniversary of the Rule 23 Amendments: Are Class Actions on the Precipice?*, 30 Antitrust, 23, 24 (Spring 2016).

Federal Rules – and particularly of Rule 23." *Smith v. Bayer Corp.*, 564 U.S. 299, 310 (2011).

I acknowledge that federal law is "the supreme law of the land," West Virginia Constitution, article I, section 1, in all matters involving the interpretation of the United States Constitution and laws enacted by Congress. Further, I agree with the majority that review of federal cases can be beneficial in analyzing issues that arise under the West Virginia Rules of Civil Procedure, since our rules are largely consonant with (although not identical to, as the majority intimates) their federal counterparts. However, I am not required to, nor will I, march in lockstep with federal decisions that I believe erect barriers to West Virginia citizens' right to seek redress for injuries in the courts of this State, pursuant to the laws of this State. As noted above, the majority acknowledges the existence of a "current trend toward heightening plaintiffs' burden[,]" and my question is this: why does the majority apparently view this as a positive development in the federal law, and seek to bring West Virginia into line with this view?

In this latter regard, the majority opinion intimates, although it does not directly state, that in *State ex rel. West Virginia University Hospitals, Inc. v. Gaujot*, 242 W. Va. 54, 829 S.E.2d 54 (2019), a case in which two members of this Court did not participate, we effectively adopted federal analytical standards in class certification cases in lieu of the standards set in our own precedents. If this reading of *Gaujot* is accurate, then

the Court acted under cover of darkness; although several of the syllabus points in the case cite federal precedents, the concepts have long been established in our own case law. For example, although the Court in *Gaujot* cited only federal cases to support the legal principles set forth in syllabus points five, six and seven – all having to do with the limited and coincidental scope of merits issues in determining class certification questions – the Court admitted in the text of the opinion that "[o]ur prior decisions bear that out],]" 242 W. Va. at 63, 829 S.E.2d at 63 (citing *Chemtall*, 216 W. Va. at 455, 607 S.E.2d at 784; *Ways v. Imation Enterprises Corp.*, 214 W. Va. 305, 314, 589 S.E.2d 36, 45 (2003)).

In summary, although the majority's lengthy exposition of federal law makes for interesting reading, most of it is wholly unnecessary to the decision in this case. Further, to the extent that the majority is attempting to *sub silentio* overrule any or all of the precepts set forth in *Rezulin* and its progeny, in order to bring West Virginia in line with the "current [federal] trend toward heightening plaintiffs' burden[,]"[11] I strongly object both to the majority's tactics and to its intentions. This Court's precedents have stood the test of time and guided our circuit courts, as well as this Court on appellate review, to results that are fair to all parties.

---

[11] *See supra* page 12 & note 10.

Indeed, our precedents guided the court below – a very experienced jurist -- to a fair and legally sustainable result: permitting a class action suit to go forward on the issues of liability and causation, in a case arising from a single event which took place in a defined location over a short period of time, affecting everyone who lived and/or worked within the defined location. The majority reverses this decision, demanding that the court further explain, at great length and in excruciating detail, how these issues could be said to predominate over issues of damages; and that the court further explain superiority, *i.e.*, how class certification could possibly be a better framework for resolution of 57,000 cases (or even 5,700 cases) than requiring each plaintiff to file an individual lawsuit.

The majority opinion is flatly wrong in its analysis of the facts, creates unnecessary delay in this case, and portends a sea change in our approach to class action cases – a change for the worse. Accordingly, I dissent.