# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**September 2020 Term**

_____

No. 19-1006

_____

**FILED**
**November 20, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA EX REL.**
**SURNAIK HOLDINGS OF WV, LLC,**
Petitioner

**V.**

**THE HONORABLE THOMAS A. BEDELL,**
**SITTING BY ASSIGNMENT AS**
**JUDGE OF THE CIRCUIT COURT OF WOOD COUNTY**
**AND PAUL SNIDER, ON BEHALF OF HIMSELF**
**AND A CLASS OF OTHERS SIMILARLY SITUATED,**
Respondents

_____

**PETITION FOR WRIT OF PROHIBITION**

**WRIT GRANTED AS MOULDED**

_____

**Submitted: September 23, 2020**
**Filed: November 20, 2020**

Ryan McCune Donovan
J. Zak Ritchie
Andrew C. Robey
Hissam Forman Donovan Ritchie PLLC
Charleston, West Virginia
Attorneys for the Petitioner

Alex McLaughlin
John H. Skaggs
Calwell Luce diTrapano PLLC
Charleston, West Virginia
Attorneys for the Respondent
Paul Snider, on behalf of himself and
a class of others similarly situated

**JUSTICE JENKINS delivered the Opinion of the Court.**

**JUSTICE HUTCHISON concurs and reserves the right to file a concurring opinion.**

**JUSTICE WORKMAN dissents and reserve the right to file a dissenting opinion.**

**SYLLABUS BY THE COURT**

1.     "This Court will review a circuit court's order granting or denying a motion for class certification pursuant to Rule 23 of the *West Virginia Rules of Civil Procedure* [1998] under an abuse of discretion standard."   Syllabus point 1, *In re West Virginia Rezulin Litigation*, 214 W. Va. 52, 585 S.E.2d 52 (2003).

2.     "'A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court.  It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers.  W. Va. Code 53-1-1.'  Syllabus Point 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977)." Syllabus point 1, *State ex rel. Healthport Technologies, LLC v. Stucky*, 239 W. Va. 239, 800 S.E.2d 506 (2017).

3.     "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's

i

order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

4. "Before certifying a class under Rule 23 of the *West Virginia Rules of Civil Procedure* [1998], a circuit court must determine that the party seeking class certification has satisfied all four prerequisites contained in Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and has satisfied one of the three subdivisions of Rule 23(b). As long as these prerequisites to class certification are met, a case should be allowed to proceed on behalf of the class proposed by the party." Syllabus point 8, *In re West Virginia Rezulin Litigation*, 214 W. Va. 52, 585 S.E.2d 52 (2003).

5. "'Whether the requisites for a class action exist rests within the sound discretion of the trial court.' Syllabus Point 5, *Mitchem v. Melton*, 167 W. Va. 21, 277 S.E.2d 895 (1981)." Syllabus point 5, *In re West Virginia Rezulin Litigation*, 214 W. Va. 52, 585 S.E.2d 52 (2003).

6. "A class action may only be certified if the trial court is satisfied, after a thorough analysis, that the prerequisites of Rule 23(a) of the West Virginia Rules of Civil

Procedure have been satisfied. Further, the class certification order should be detailed and specific in showing the rule basis for the certification and the relevant facts supporting the legal conclusions." Syllabus point 8, *State ex rel. Chemtall Inc. v. Madden*, 216 W. Va. 443, 607 S.E.2d 772 (2004).

7.    When a class action certification is being sought pursuant to West Virginia Rule of Civil Procedure 23(b)(3), a class action may be certified only if the circuit court is satisfied, after a thorough analysis, that the predominance and superiority prerequisites of Rule 23(b)(3) have been satisfied. The thorough analysis of the predominance requirement of West Virginia Rule of Civil Procedure 23(b)(3) includes (1) identifying the parties' claims and defenses and their respective elements; (2) determining whether these issues are common questions or individual questions by analyzing how each party will prove them at trial; and (3) determining whether the common questions predominate. In addition, circuit courts should assess predominance with its overarching purpose in mind—namely, ensuring that a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. This analysis must be placed in the written record of the case by including it in the circuit court's order regarding class certification.

8. A circuit court's failure to conduct a thorough analysis of the requirements for class certification pursuant to West Virginia Rules of Civil Procedure 23(a) and/or 23(b) amounts to clear error.

**Jenkins, Justice:**

This matter is before this Court on a petition for writ of prohibition. Respondent the Honorable Thomas A. Bedell, sitting by assignment as Judge of the Circuit Court of Wood County, certified a class action against Petitioner, Surnaik Holdings of WV, PLLC ("Surnaik"). The circuit court named Respondent Paul Snider ("Mr. Snider") as class representative. Surnaik asserts that the circuit court clearly erred in certifying this class and asks this Court to prohibit the circuit court from conducting any further proceedings in this case until the circuit court has vacated its class certification order. Based upon the record before us, the arguments of the parties, and the applicable law, we find that the circuit court exceeded its jurisdiction by failing to conduct an appropriate and thorough analysis of the West Virginia Rules of Civil Procedure 23(a) and 23(b) class certification requirements. Accordingly, we grant the writ of prohibition as moulded and vacate the circuit court's order certifying the class action.

# I.

## FACTUAL AND PROCEDURAL HISTORY

In the early morning hours of Saturday, October 21, 2017, a fire erupted at a warehouse owned by Surnaik in Parkersburg, West Virginia. The fire burned from October 21 to October 29. Mr. Snider asserts that the fire "emitted a plume of smoke—consisting primarily of particulate matter and gases—that adversely impacted neighboring property owners and lessees for days, residents as well as businesses and government agencies." Mr. Snider further alleges that "[t]he most obvious and immediate adverse impact—as well

1

as the one that is common to all members of the class—is annoyance resulting from the smoke itself, which at certain concentrations is irritating to the nose and throat of most[,] if not all[,] persons."

Mr. Snider, on behalf of himself and on behalf of a class of others similarly situated, filed a complaint against Surnaik in the Circuit Court of Wood County, on October 30, 2017.[1] In the complaint, Mr. Snider alleged negligence; reckless, willful, and wanton indifference motivated by financial gain; nuisance; trespass; and "class action allegations." Furthermore, in the complaint, Mr. Snider sought to "represent a class that consists of all residents and businesses within an 8.5 mile radius of the warehouse, which was located on the 3800 block of Camden Avenue, in Parkersburg, West Virginia." Mr. Snider indicated that "[t]he radius includes at least the following cities, towns, and population clusters in the State of West Virginia: Parkersburg, Vienna, Blennerhassett, Lubeck, Washington, and Waverly. It also includes one population cluster in the State of Ohio, around Belpre, Ohio."

---

[1] Surnaik represented that

> [i]n a race to the courthouse, five separate class action cases were filed against [it] or related entities. This case is the only active case remaining, as the other four cases have either been dismissed with prejudice or otherwise abandoned. *See Barker, et al. v. Saurabh Naik, et al.*, No. 2:17-cv-4387 (S.D. W. Va.) (dismissed with prejudice); *Timothy Callihan, et al. v. Surnaik Holdings of WV, LLC, et al.*, No. 2:17-cv-4386 (S.D. W. Va.) (pending, but abandoned); *Steve Mohwish, et al. v. Sirnaik, LLC, et al.*, No. 2:17-cv-4417 (S.D. W. Va.) (voluntarily dismissed); *Snodgrass v. Surnaik Holdings of WV, LLC*, No. 18-C-35 (Wood County) (voluntarily dismissed).

Mr. Snider requested compensatory damages in the form of diminution in value of property, loss of the right to use and enjoy property, lost business profits, and personal injuries, as well as punitive damages. Surnaik answered the complaint in November 2018.[2]

Subsequently, on April 30, 2019, Mr. Snider filed a motion for class certification and memorandum of law in support thereof ("the motion"). In the motion, Mr. Snider defined the class[3] as follows:

> All lawful possessors—primarily owners and lessees—of real property located within one [of] the isopleths depicted on the maps attached hereto as Exhibits 1-A, 1-B, and 1-C, who did one or more of the following in October 2017:
>
> (1) Resided on the property within the isopleth; *or*
>
> (2) Conducted business operations, including those of a non-profit business, on the property within the isopleth; *or*
>
> (3) Conducted state, county, [or] municipal government operations on the property within the isopleths.

Mr. Snider further alleged that the requirements of West Virginia Rule of Civil Procedure 23(a)[4] were met: numerosity, commonality, typicality, and adequacy of representation. In

---

[2] It appears from the limited record before us that the large amount of time between the filing of the complaint and the filing of the answer is because the matter had been removed to federal court and then remanded back to the circuit court prior to the filing of an answer.

[3] Mr. Snider noted that this class of individuals "includes the small percentage (roughly 14%) of property possessors that are citizens of Ohio[.]"

[4] West Virginia Rule of Civil Procedure 23(a) provides as follows:

addition, Mr. Snider asserted that this action also met the requirements of Rule 23(b)(3)[5]—

predominance and superiority.

(a) *Prerequisites to a class action.*—One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

[5] West Virginia Rule of Civil Procedure 23(b) provides that a class action may be maintained only if the prerequisites of Rule 23(a) are met in addition to at least one of the following requirements:

(1) The prosecution of separate actions by or against individual members of the class would create a risk of

(A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:  (A) the interest of members of the class in individually controlling the prosecution or defense of separate

4

On May 31, 2019, Surnaik responded to Mr. Snider's motion, contending that class certification is not appropriate because (1) a class cannot be certified when a significant number of proposed class members are uninjured; (2) a class action is not superior to other available methods for adjudication of the matter; (3) Mr. Snider is not an adequate representative because he knows little about the case and admitted he could not be fair to certain class members; and (4) Mr. Snider's claims are not typical of the class claims because he has not suffered any property damage. As such, Surnaik urged the circuit court to deny the motion for class certification because Mr. Snider failed to satisfy all four prerequisites contained in Rule 23(a)—namely typicality and adequacy of representation—and the predominance and superiority requirements of Rule 23(b)(3). Additionally, Surnaik contended that Mr. Snider failed to satisfy the implicit requirement of ascertainability, as well as standing. Mr. Snider then filed a reply in support of his class certification motion.

---

actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

W. Va. R. Civ. P. 23(b).

5

The circuit court held a hearing on the motion for class certification on July 8, 2019.[6] Following the hearing, the circuit court entered its order granting class certification and essentially adopted Mr. Snider's class definition. In the "Findings of Fact" section of its order, the circuit court noted that Mr. Snider provided expert testimony "delineating the geographical boundary of the area allegedly impacted by a 24-hour average of at least three micrograms per cubic meter ('ug/m$^3$') of fine particles less than 2.5 microns in size ('PM$_{2.5}$')." The circuit court further noted that Mr. Snider submitted expert testimony "tending to show that those levels of fine particulate matter increase the risk of injury, resulting in death, asthma, heart attacks, and coronary artery thickening in a small percentage of persons subjected to them, and some level of discomfort in a much larger percentage of individuals." Lastly, the circuit court noted that Mr. Snider provided "evidence tending to show that the area within the same geographical boundary experienced a peak total suspended particulate level ('TSP') of at least 100 ug/m$^3$." The circuit court went on to

> find[] that the following requirements for certification are met:
>
> a. Numerosity
>    The Class consists of an estimated 57,000 residents and additional businesses in the area surrounding the warehouse fire which are alleged to have suffered damages as a result of the Warehouse Fire. Joinder is impracticable[,] and the numerosity requirement of W. Va. R. Civ. P. 23(a) is satisfied.

---

[6] A transcript of the hearing was not included in either the joint appendix or the supplemental appendix filed in this matter.

b. Commonality
Common questions of law and fact exist for each of the Class Members with regard to the alleged conduct of the Defendant. Among these are questions relating to the Defendant's liability for their alleged negligent failure to maintain the fire protection system in the warehouse and the geographical area impacted by harmful levels of smoke from the fire. These issues are central to this case and are sufficient to establish commonality under W. Va. R. Civ. P. 23(a).

c. Typicality
Class Representative Paul Snider testified in his deposition that he suffered noxious levels of smoke in his home for days following the Warehouse Fire and that he and his wife both suffered respiratory impairments—in his case, difficulty breathing diagnosed for the first time as asthma—as a result of the Warehouse Fire. The Court finds that these claims are typical of absent Class Members in this litigation with elements of proof and damages typical of absent Class Members. The bases for compensation asserted by the Class Representative— which include damages for annoyance and inconvenience from having his home invaded by noxious smoke—are consistent with and typical of the claims available to absent Class Members, including those claiming property damage. Therefore, the element of typicality is satisfied under W. Va. R. Civ. P. 23(a).

d. Adequate Representation
The Class Representative's interests do not conflict with, and are co-extensive with, those of absent Class Members. Paul Snider, the Class Representative, testified at the hearing and demonstrated sufficient interest in, knowledge of, and involvement with the case. Additionally, this Court recognizes the experience of the counsel designated as Class Counsel below, and finds that the requirement of adequate representation under W. Va. R. Civ. P. 23(a) has been fully met.

e. Predominance of Common Issues
Plaintiff[] commonly assert[s] that the Defendant was negligent and recklessly indifferent to the well-being of its neighbors in failing to maintain its fire protection system, and that an award of compensatory and punitive damages to

residents, businesses, and government agencies in the area impacted by noxious and harmful levels of smoke from the Warehouse Fire is therefore appropriate. The Court finds that the overarching liability issues predominate over any individual questions, favoring class treatment consistent with W. Va. R. Civ. P. 23(b)(3).

f. Superiority of the Class Action Mechanism
The class action mechanism is ideally suited for resolving these matters. Class certification promotes efficiency and uniformity of judgment, among other reasons, because the many Class Members will not be forced to separately pursue claims arising from the same incident, which might lead to inconsistent verdicts. The Court specifically finds that the class action mechanism is superior to any available mechanisms for aggregating many individual claims, including before the West Virginia Mass Litigation Panel, because the damages suffered by most class members are too small to warrant the associated costs of pursuing such cases, such as basic filing fees, deposition fees, attorney time in processing, and expert witness fees.

In the "Conclusions of Law" section of its order, the circuit court further found that "[t]he weight of authority from around the United States, in state and federal courts, favors class-wide treatment and resolution in single event mass catastrophe cases, particularly of non-personal injury and property-based classes, and particularly for the resolution of the common issues of liability." Additionally, the circuit court stated that despite Surnaik's argument that many class members are uninjured because not everyone suffered bodily injury or will require property clean-up, "the universe of legally cognizable injuries is not so narrowly defined." The circuit court concluded that "owning or residing in a house that is invaded by noxious or harmful levels of smoke negligently released from a fire is a cognizable injury." It found that Mr. Snider had standing because he "testified

8

in his deposition that his own house was invaded by smoke from the Warehouse Fire and that the invasion by this smoke was perceptible and noxious, that he felt compelled to wear a dust mask, . . . that it was unpleasant[,]" and that "this alleged injury is a legally cognizable injury[.]" The circuit court explained that the testimony of Mr. Snider's experts

> taken together, supports the inference that all putative Class Members—everyone with[in] the Class Area set forth in the attached maps—suffered the legally cognizable injury of having had their homes or businesses invaded by harmful and noxious levels of smoke negligently released from a fire, whether or not those individuals suffered any bodily injury.

Consequently, the circuit court "conclude[d] that all putative Class Members and [Mr. Snider,] himself[,] suffered an alleged cognizable injury, and that [Mr. Snider] has submitted evidence supporting these allegations of cognizable injury." It further concluded that "[t]he Class action mechanism is plainly superior to any other mechanism available to Class Members." The circuit court then laid out its trial plan which included two phases: (1) a class wide trial on common issues and (2) follow-up hearings for individual determinations regarding losses and damages. After the entry of the circuit court's order, Surnaik filed the instant petition on November 4, 2019, seeking to prohibit enforcement of the class certification order.

## II.

### STANDARD FOR ISSUANCE OF WRIT

Generally, "[t]his Court will review a circuit court's order granting or denying a motion for class certification pursuant to Rule 23 of the *West Virginia Rules of*

9

*Civil Procedure* [1998] under an abuse of discretion standard." Syl. pt. 1, *In re W. Va. Rezulin Litig.*, 214 W. Va. 52, 585 S.E.2d 52 (2003). However, Surnaik seeks a writ of prohibition, and we have said that "'[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code 53-1-1.' Syllabus Point 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977)." Syl. pt. 1, *State ex rel. Healthport Techs., LLC v. Stucky*, 239 W. Va. 239, 800 S.E.2d 506 (2017). We previously have set forth the following standard for issuance of a writ of prohibition when it is alleged a lower court is exceeding its authority:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996); *see also Rezulin*, 214 W. Va. at 62, 585 S.E.2d at 62 (same). While we need not find that all factors are present, we attach "substantial weight" to the factor that asks "whether the lower

tribunal's order is clearly erroneous as a matter of law[.]" *Id.* Further, we have held that "an order awarding class action standing is . . . reviewable, but only by writ of prohibition." *State ex rel. W. Va. Univ. Hosps., Inc. v. Gaujot*, 242 W. Va. 54, 61 n.12, 829 S.E.2d 54, 61 n.12 (quoting Syl. pt. 2, in part, *McFoy v. Amerigas, Inc.*, 170 W. Va. 526, 295 S.E.2d 16 (1982)). With these considerations in mind, we turn to the petition before us.

## III.

## DISCUSSION

In this matter of prohibition, Surnaik asserts the circuit court clearly erred in several respects in certifying the class action. First, Surnaik argues that the circuit court erred by certifying a class in which only 10%[7] of the class is likely to have been injured, thereby failing to satisfy the predominance requirement of West Virginia Rule of Civil

---

[7] In the deposition of Mr. Snider's expert, Dr. Mike McCawley, the following exchange occurred:

> Q. So the number that you are trying to reach is, as we kind of discussed before, what's the threshold at which someone could have inflammation?
> A. Correct.
> Q. Not the threshold at which a significant number of people would have—
> A. Correct.
> Q. —Inflammation?
> A. Yeah, and that's the difference between the two.
> Q. So with your number, it could be the case that only 10% of the people are exposed, for example?
> A. Correct.
> Q. Okay. Because you're setting that floor where it's possible to be harmed?
> A. Yes.

11

Procedure 23(b)(3). Second, Surnaik contends that mass accident and toxic tort matters, such as this one, are not appropriate for class adjudication pursuant to West Virginia Rule of Civil Procedure 23(b)(3). Third, Surnaik asserts that because Mr. Snider conceded he did not suffer any property damage, the requirements of standing and typicality preclude him from representing a class seeking that relief. *See generally* W. Va. R. Civ. P. 23(a). Fourth, Surnaik alleges that the circuit court erred by certifying a class whose members are not readily identifiable by reference to objective criteria. Lastly, Surnaik argues that the circuit court failed to conduct a thorough analysis of the Rule 23 requirements. We find that Surnaik's issues are intertwined with the overriding issue primarily being the circuit court's failure to conduct a thorough analysis, under Rules 23(a) and 23(b) and, as such, we consider them together with a focus on the Rule 23(b)(3) class certification requirements. Upon consideration of these arguments, we agree with Surnaik that the circuit court failed to conduct a thorough analysis of the Rule 23 class certification requirements, conclude that the circuit court clearly erred, and find that Surnaik is entitled to relief in prohibition as moulded herein.

This Court consistently has held that

> [b]efore certifying a class under Rule 23 of the *West Virginia Rules of Civil Procedure* [1998], a circuit court must determine that the party seeking class certification has satisfied all four prerequisites contained in Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—*and has satisfied one of the three subdivisions of Rule 23(b)*. As long as these prerequisites to class certification are met, a case should be allowed to proceed on behalf of the class proposed by the party.

Syl. pt. 8, *In re W. Va. Rezulin Litig.*, 214 W. Va. 52, 585 S.E.2d 52 (emphasis added). *See also Perrine v. E.I. du Pont de Nemours & Co.*, 225 W. Va. 482, 525, 694 S.E.2d 815, 858 (2010) ("'To be maintainable as a class action, a suit must meet not only the prerequisites of Rule 23(a), but also the additional requirements of one of the subparts of Rule 23(b).' Cleckley, Davis, & Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 23(b)[2], at 543."). Furthermore, "'[w]hether the requisites for a class action exist rests within the sound discretion of the trial court.' Syllabus Point 5, *Mitchem v. Melton*, 167 W. Va. 21, 277 S.E.2d 895 (1981)." Syl. pt. 5, *Rezulin*, 214 W. Va. 52, 585 S.E.2d 52.

However, class certification determinations are not perfunctory. *See Burdette v. FMC Corp.*, 566 F. Supp. 808, 813 n.3 (S.D.W. Va. 1983) ("Certification is not a perfunctory act. *Doctor v. Seaboard Coastline R. Co.*, 540 F.2d 699 (4th Cir. 1976); *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 64, n.6 (4th Cir. 1977), *cert. denied*, 435 U.S. 968, 98 S. Ct. 1605, 56 L. Ed. 2d 58 [(____)]; *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1312-1315 (4th Cir. 1978); *Belcher v. Bassett Furniture*, 588 F.2d 904, 906 (4th Cir. 1978)."). The party who proposes certification bears the burden of proving that certification is warranted. *See* Syl. pt. 4, *Rezulin*, 214 W. Va. 52, 585 S.E.2d 52. Moreover, the circuit court must give careful consideration to whether the party has met that burden. "A class action may only be certified if the trial court is satisfied, *after a thorough analysis*, that the prerequisites of Rule 23(a) of the *West Virginia Rules of Civil Procedure* have been

13

satisfied.  Further, the class certification order should be detailed and specific in showing

the rule basis for the certification and the relevant facts supporting the legal conclusions."

Syl. pt. 8, *State ex rel. Chemtall Inc. v. Madden*, 216 W. Va. 443, 607 S.E.2d 772 (2004)

(emphasis added).  Further "failure to conduct a thorough analysis . . . amounts to clear

error[,]" *Chemtall*, 216 W. Va. at 454, 607 S.E.2d at 783, and an abuse of discretion.  *See*

*Brown v. Nucor Corp.*, 785 F.3d 895, 902 (4th Cir. 2015) ("A district court abuses its

discretion when it materially misapplies the requirements of Rule 23.").

At the outset, we find a general review of the status of how Rule 23(b)(3)'s

predominance requirement is treated in the federal courts to be beneficial to the Court's

analysis in this matter.[8]  The federal courts have delineated what is actually necessary in

order to satisfy this requirement.  First, satisfying the predominance requirement is much

more demanding than the general commonality requirement under Rule 23(a).  *See, e.g.*,

*Comcast Corp. v. Behrend*, 569 U.S. 27, 34, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515

(2013) ("If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than

Rule 23(a).  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623-624, 117 S. Ct. 2231,

[2250,] 138 L. Ed. 2d 689 (1997)."); *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 n.4

---

[8] "Because the West Virginia Rules of Civil Procedure are practically identical to the Federal Rules, we give substantial weight to federal cases, especially those of the United States Supreme Court, in determining the meaning and scope of our rules. *See generally Burns v. Cities Serv. Co.*, 158 W. Va. 1059, 217 S.E.2d 56 (1975); *Aetna Casualty & Sur. Co. v. Federal Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963)." *Painter v. Peavy*, 192 W. Va. 189, 192 n.6, 451 S.E.2d 755, 758 n.6 (1994).

(4th Cir. 2001) ("In a class action brought under Rule 23(b)(3), the commonality requirement of Rule 23(a)(2) is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over other questions." (internal quotations and citations omitted)).

Additionally, the federal courts have acknowledged that when undertaking an examination pursuant to the Rule 23(b)(3) predominance requirement, a rigorous analysis must occur. For example, the United States Court of Appeals for the Third Circuit has recognized that "the '*predominance requirement imposes a more rigorous obligation upon a reviewing court* to ensure that issues common to the class predominate over those affecting only individual class members.' *Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011)." *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127 (3d Cir. 2018) (emphasis added) (footnote omitted). *See also Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019), *cert. denied*, ___ U.S. ___, 140 S. Ct. 676, 205 L. Ed. 2d 440 (2019) ("The predominance inquiry calls upon courts to give careful scrutiny to the relation between common and individual questions in the case." (internal quotations and citations omitted)); *In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1178-79 (N.D. Cal. 2013) ("A court's class-certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim. This rigorous analysis applies to both Rule 23(a) and Rule 23(b)." (internal quotations and citations omitted)).[9]

---

[9] Additionally, we note that there is a "current trend towards heightening plaintiffs' burden . . . [which] has decidedly outpaced concern over providing a mechanism

15

Next, federal courts have further delineated what the lower court must actually consider in its examination in regard to the predominance requirement. The United States Supreme Court recently explained how evaluation of the predominance requirement works:

> An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof. The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be

for litigating low-value claims." Ellen Meriwether, *The Fiftieth Anniversary of the Rule 23 Amendments: Are Class Actions on the Precipice?*, 30 Antitrust, 23, 24 ( Spring 2016). This trend is demonstrated in a recent United States Supreme Court decision *Comcast Corp. v. Behrend*, 569 U.S. 27, 29, 133 S. Ct. 1426, 1429, 185 L. Ed. 2d 515 (2013). In *Comcast*, the Supreme Court addressed class certification and through the prism of Federal Rule of Civil Procedure 23(b)(3). The Supreme Court ultimately reversed certification on the ground that the plaintiff's expert proffered a damages model measuring aggregate class-wide damages under four theories of liability, where only one of the theories had been held by the district court to be provable with common evidence. *See generally id.* However,

> [s]ince that decision, there has been considerable debate as to its import and breadth, with some maintaining that the ruling 'breaks no new ground on the standard of certifying class actions' while others urge that it requires a demonstration of 'commonality of damages' and a damages model that would allow individual damages to be established with common proof.

*Meriwether*, *supra*, at 24 (footnotes omitted).

16

tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Tyson Foods, Inc. v. Bouaphakeo*, ____ U.S. ___, 136 S. Ct. 1036, 1045, 194 L. Ed. 2d 124

(2016) (alteration, citations, and internal quotation marks omitted).

Additionally, several of the United States Courts of Appeals also have formulated tests for how this requirement is met. For example, the United States Court of Appeals for the Second Circuit has explained that

> [t]he "predominance" requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). The requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *see also Myers* [*v. Hertz Corp.*], 624 F.3d [537,] [] 547.
>
> A court examining predominance must assess (1) "the elements of the claims and defenses to be litigated," (2) "whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief," and (3) "whether the common issues can profitably be tried on a class[-] wide basis, or whether they will be overwhelmed by individual issues." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015).

*Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 512 (2d Cir. 2020). Similarly, the

United States Court of Appeals for the Fourth Circuit described the predominance inquiry

as "focus[ing] not only on the existence of common questions, but also on how those

17

questions relate to the controversy at the heart of the litigation." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 366 (4th Cir. 2014). The Fourth Circuit additionally recognized that when undertaking the predominance analysis, "the [United States] Supreme Court has noted [that] '[c]onsidering whether questions of law or fact common to class members predominate begins . . . with the elements of the underlying cause of action.' *Erica P. John Fund, Inc. v. Halliburton Co.*, [563] U.S. [804,] [809], 131 S. Ct. 2179, 2184, 180 L. Ed. 2d 24 (2011) (internal quotation marks omitted)." *Adair*, 764 F.3d at 367 n.19.

Furthermore, the Court of Appeals for the Third Circuit has explained its predominance examination as follows:

> Predominance tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, a standard far more demanding than the commonality requirement of Rule 23(a), requiring more than a common claim[.] Issues common to the class must predominate over individual issues[.] Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case[.] If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable. Accordingly, we examine the elements of plaintiffs' claim "through the prism" of Rule 23 to determine whether the District Court properly certified the class.

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310-11 (3d Cir. 2008), *as amended* (Jan. 16, 2009) (internal quotations and citations omitted) (footnote omitted). *See also Reinig*, 912 F.3d at 127-28 ("At the class certification stage, the predominance requirement is met only if the district court is convinced that the essential elements of the claims brought

18

by a putative class are 'capable of proof at trial through evidence that is common to the class rather than individual to its members. In practice, this means that a district court must look first to the elements of the plaintiffs' underlying claims and then, 'through the prism' of Rule 23, undertake a rigorous assessment of the available evidence and the method or methods by which the plaintiffs propose to use the evidence to prove those elements. If proof of the essential elements of the claim requires individual treatment, then class certification is unsuitable.").

Likewise, the United States Court of Appeals for the Fifth Circuit has stated that

> Federal Rule of Civil Procedure 23(b)(3) requires the court to determine whether the questions of law or fact common to class members predominate over any questions affecting only individual members. This entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials. Absent this analysis, "it [is] impossible for the court to know whether the common issues would be a 'significant' portion of the individual trials . . . much less whether the common issues predominate."

*Seeligson v. Devon Energy Prod. Co., L.P.*, 761 F. App'x 329, 338 (5th Cir. 2019) (quotations and citations omitted) (footnotes omitted).

One of the most succinct tests establishing what a court should examine when undertaking an analysis of the predominance requirement was set forth by the United States

19

Court of Appeals for the Eleventh Circuit's decision in *Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225 (11th Cir. 2016).  In *Brown*,

> the Eleventh Circuit provided a three-step approach for evaluating predominance: (1) identify the parties' claims and defenses and their elements, (2) determine whether these issues are common questions or individual questions by analyzing how each party will prove them at trial, and (3) determine whether the common questions predominate.  In addition, . . . district courts should assess predominance with its overarching purpose in mind—namely, ensuring that a class action would achieve economies of time, effort, expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.

*Ace Tree Surgery, Inc. v. Terex S. Dakota, Inc.*, 332 F.R.D. 402, 408-09 (N.D. Ga. 2019) (internal quotations and citations omitted).  Accordingly, it is clear that the federal courts have closely considered what is necessary under Rule 23(b)(3).

Turning now to West Virginia law, we examine class certification requirements—specifically, the Rule 23(b)(3) predominance requirement—as discussed in *In re West Virginia Rezulin Litigation*, 214 W. Va. 52, 585 S.E.2d 52 (2003).  While the *Rezulin* Court created eleven new syllabus points regarding class actions, *none* of them specifically relate to what the circuit court is required to consider in the context of Rule 23(b)(3)'s predominance and superiority requirements.

*Rezulin* did recognize that if a class is being certified pursuant to Rule 23(b)(3), then

20

a class action may be certified to proceed on behalf of a class [only] if the trial court finds "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and finds that a class action "is superior to other available methods for the fair and efficient adjudication of the controversy."

*Rezulin*, 214 W. Va. at 71, 585 S.E.2d at 71. The *Rezulin* Court also observed that "[t]he predominance criterion in Rule 23(b)(3) is a corollary to the 'commonality' requirement found in Rule 23(a)(2). While the 'commonality' requirement simply requires a showing of common questions, the 'predominance' requirement requires a showing that the common questions of law or fact outweigh individual questions." *Id.* The *Rezulin* Court stated that "[a] conclusion on the issue of predominance requires an evaluation of the legal issues and the proof needed to establish them. As a matter of efficient judicial administration, the goal is to save time and money for the parties and the public and to promote consistent decisions for people with similar claims." *Id.* at 72, 585 S.E.2d at 72.

Moreover, the *Rezulin* Court explained that

[t]he predominance requirement is not a rigid test, but rather contemplates a review of many factors, the central question being whether "adjudication of the common issues in the particular suit has important and desirable advantages of judicial economy compared to all other issues, or when viewed by themselves." 2 *Newberg on Class Actions*, 4th Ed., § 4:25 at 174.

*Id.* The *Rezulin* Court concluded that

[t]he predominance requirement does not demand that common issues be dispositive, or even determinative; it is not a comparison of the amount of court time needed to adjudicate common issues versus individual issues; nor is it a scale-

21

> balancing test of the number of issues suitable for either common or individual treatment. 2 *Newberg on Class Actions*, 4th Ed., § 4:25 at 169-173. Rather, "[a] single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." *Id.* at 172. The presence of individual issues may pose management problems for the circuit court, but courts have a variety of procedural options under Rule 23(c) and (d) to reduce the burden of resolving individual damage issues, including bifurcated trials, use of subclasses or masters, pilot or test cases with selected class members, or even class decertification after liability is determined. As the leading treatise in this area states, "[c]hallenges based on . . . causation, or reliance have usually been rejected and will not bar predominance satisfaction because those issues go to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability." 2 *Newberg on Class Actions*, 4th Ed., § 4.26 at 241. "That class members may eventually have to make an individual showing of damages does not preclude class certification." *Smith v. Behr Process Corp.*, 113 Wash. App. 306, 323, 54 P.3d 665, 675 (2002) (citations omitted).

*Id.*

The United States Supreme Court has observed West Virginia's noticeable departure from looking to federal law for guidance when analyzing what is required under the Rule 23(b)(3) predominance requirement.

> [T]he West Virginia Supreme Court has gone some way toward resolving the matter before us by declaring its independence from federal courts' interpretation of the Federal Rules—and particularly of Rule 23. In *In re W. Va. Rezulin Litigation*, 214 W. Va. 52, 585 S.E.2d 52 (2003) *(In re Rezulin)*, the West Virginia high court considered a plaintiff's motion to certify a class[.] . . . The court made a point of complaining about the parties' and lower court's near-exclusive reliance on federal cases about Federal Rule 23 to decide the certification question. Such cases, the court cautioned, "'may be persuasive, but [they

are] not binding or controlling.'" *Id.,* at 61, 585 S.E.2d, at 61. And lest anyone mistake the import of this message, the court went on: The aim of "this rule is to avoid having our legal analysis of our Rules 'amount to nothing more than Pavlovian responses to federal decisional law.'" *Ibid.* (emphasis deleted). . . .

. . . [T]he West Virginia Supreme Court in *In re Rezulin* adopted an all-things-considered, balancing inquiry in interpreting its Rule 23. Rejecting any "rigid test," the state court opined that the predominance requirement "contemplates a review of many factors." 214 W. Va., at 72, 585 S.E.2d, at 72. Indeed, the court noted, a "'single common issue'" in a case could outweigh "'numerous . . . individual questions.'" *Ibid.* That meant, the court further explained (quoting what it termed the "leading treatise" on the subject), that even objections to certification "'based on . . . causation, or reliance'"—which typically involve showings of individual injury—"'will not bar predominance satisfaction.'" *Ibid.* (quoting 2 A. Conte & H. Newberg, Newberg on Class Actions § 4.26, p. 241 (4th ed. 2002)).

*Smith v. Bayer Corp.*, 564 U.S. 299, 310-12, 131 S. Ct. 2368, 2377-78, 180 L. Ed. 2d 341 (2011). As such, in rejecting any reliance on or guidance from the federal courts' views and tests regarding how our state courts are to examine the Rule 23(b)(3) requirements, we have instead utilized a vague, all things considered test that does not give the circuit courts any real guidance. While we may not be bound to follow the federal courts' interpretation of its Rule 23(b)(3), we nevertheless find the weight of the federal jurisprudence to be persuasive.[10] Accordingly, we conclude that to the extent *Rezulin* simply suggests that

---

[10] Recently, this Court adopted and applied federal law in the context of the Rule 23(a) commonality determination and other aspects of class action matters in *State ex rel. West Virginia University Hospitals, Inc. v. Gaujot*, 242 W. Va. 54, 62, 829 S.E.2d 54, 62 (2019).

23

there is not much difference between commonality and predominance and that no rigid test is necessary, it must now be modified.

Given the aforementioned authorities, we now hold that when a class action certification is being sought pursuant to West Virginia Rule of Civil Procedure 23(b)(3), a class action may be certified only if the circuit court is satisfied, after a thorough analysis, that the predominance and superiority prerequisites of Rule 23(b)(3) have been satisfied. The thorough analysis of the predominance requirement of West Virginia Rule of Civil Procedure 23(b)(3) includes (1) identifying the parties' claims and defenses and their respective elements; (2) determining whether these issues are common questions or individual questions by analyzing how each party will prove them at trial; and (3) determining whether the common questions predominate. In addition, circuit courts should assess predominance with its overarching purpose in mind—namely, ensuring that a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. This analysis must be placed in the written record of the case by including it in the circuit court's order regarding class certification.

In the case *sub judice*, Surnaik claims both that the circuit court erred in its analysis of the Rule 23(b)(3) predominance requirement and that its order "is deficient because it did not conduct a 'thorough analysis' explaining how [Mr. Snider] satisfied the

requirements of Rule 23[.]"[11] After carefully examining the circuit court's order we agree that it is woefully inadequate.

Most significantly, the circuit's court's order fails to conduct a thorough analysis of the Rule 23(b)(3) predominance requirement. Surnaik repeatedly has challenged the predominance requirement in this matter by asserting that the proposed class is inappropriately composed of a significant number of uninjured individuals— approximately 90% of the class members. Surnaik alleges that because of the large amount of uninjured class members, "individualized issues of injury and causation will overwhelm questions common to the class." Additionally, Surnaik contends that this type of mass accident matter is not appropriate for class action because "variations in exposure, and differences in the amount of exposure and the nexus between exposure and injury lead to different applications of legal rules, including matters of causation, damages, and affirmative defenses, such as comparative fault and assumption of risk, which are applicable to each [individual] plaintiff."

While the circuit court's order did have *slightly* more analysis regarding predominance than the other Rule 23 requirements, it failed to (1) thoroughly identify the

---

[11] While it appears that the focus of Surnaik's argument is in regards to the failure to adequately analyze the typicality and ascertainability requirements, Surnaik nonetheless asserted that the circuit court's order is inadequate in all respects of the Rule 23 thorough analysis requirement.

parties' claims and defenses and their respective elements; (2) determine whether these issues are common questions or individual questions by analyzing how each party will prove them at trial; and (3) determine whether the common questions predominate. Specifically, the order contained the following predominance analysis:

> Plaintiff[] commonly assert[s] that the Defendant was negligent and recklessly indifferent to the well-being of its neighbors in failing to maintain its fire protection system, and that an award of compensatory and punitive damages to residents, businesses, and government agencies in the area impacted by noxious and harmful levels of smoke from the Warehouse Fire is therefore appropriate. The Court finds that the overarching liability issues predominate over any individual questions, favoring class treatment consistent with W. Va. R. Civ. P. 23(b)(3).

The circuit court's analysis does not come close to rising to the level that is required. There was very limited, to say the least, discussion of the actual claims and causes of action in this matter. Mr. Snider asserts various causes of action including negligence, reckless indifference, nuisance, and trespass. Along with each of these various causes of action are alleged damages ranging from different types of property damage, personal injuries, and lost business profits. As stated above, the circuit court's only discussion in the "Findings of Fact" section of its order states "Plaintiff[] commonly assert[s] that the Defendant was negligent and recklessly indifferent to the well-being of its neighbors in failing to maintain its fire protection system." As such, the circuit court's order identifies only the negligence and reckless, willful, and wanton indifference causes of action. There is absolutely no identification of the nuisance or trespass causes of action also brought by Mr. Snider. The circuit court's order also fails to discuss any of the required essential elements of each of

26

the causes of action, including negligence or reckless indifference.[12] There is no discussion

of whether the essential elements of each cause of action are capable of individualized or

even generalized proof. Finally, the order summarily concludes that the overarching

liability issues predominate over any individual questions without any legal or factual

analysis as to why this is so.[13]

---

[12] *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 367 n.19 (4th Cir. 2014) ("The district court also failed to consider whether the different elements of the diverse causes of action the plaintiffs assert may affect the Rule 23(b)(3) analysis. . . . Here, the plaintiffs assert a diverse array of claims, yet the court failed to consider whether any of the unique elements of those claims would affect the predominance analysis. This error is clearest with respect to the district court's decision to certify the breach of contract claims in [the cases of] *Kiser* and *Adkins* [a part of this consolidated appeal], which it did without explanation and notwithstanding the magistrate's recommendation to the contrary. And neither the magistrate nor the district court addressed the breach of contract claims in *Addison* [case of this consolidated appeal]. On remand, the district court should rigorously analyze each of the plaintiffs' claims to determine whether any of the distinct elements of those actions might affect the predominance of common questions.").

[13] We additionally note that the proposed class consists of residents of both West Virginia and Ohio. The federal courts have found this information to be especially important in their predominance analysis. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996) ("In a multi-state class action, variations in state law may swamp any common issues and defeat predominance. *See Georgine v. Amchem Prods.*, 83 F.3d 610, 618 (3d Cir. 1996) (decertifying class because legal and factual differences in the plaintiffs' claims 'when exponentially magnified by choice of law considerations, eclipse any common issues in this case'); *American Medical Sys.*, 75 F.3d at 1085 (granting mandamus in a multi-state products liability action, in part because '[t]he district court . . . failed to consider how the law of negligence differs from jurisdiction to jurisdiction[.]"). Accordingly, a [] court must consider how variations in state law affect predominance and superiority. *Walsh v. Ford Motor Co.*, 807 F.2d 1000 (D.C. Cir. 1986) (Ruth Bader Ginsburg, J.), *cert. denied*, 482 U.S. 915, 107 S. Ct. 3188, 96 L. Ed. 2d 677 (1987)."). In the present matter, the circuit court made no mention of this fact and likewise no analysis as to this issue when considering the predominance and superiority class certification requirements.

Although the circuit court's order does contain *a bit* more analysis in the "Conclusions of Law" section by intertwining the predominance and superiority requirements together, this discussion does not cure the defects of its initial analysis. Specifically, the order cites to a list of cases to support its finding that a mass accident case is appropriate for class action treatment. The circuit court, itself, notes that those cases typically involve "non-personal injury" matters. Then, the circuit court cites to a case in support of its conclusion that Mr. Snider's case is appropriate for class certification; however, it goes on to state that the case it is relying on "certified two of three proposed subclasses—the ones 'involving damages to class members' property'—and only denied certification for the subclass 'involving personal injuries.'" Essentially, the circuit court's citation to cases without any analysis as to why they specifically apply to the facts of the present matter "does little more than prove that it is theoretically possible to satisfy the predominance and superiority requirements of Rule 23(b)(3) in a mass tort or mass accident class action[.]" *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006). It then summarily disposed of Surnaik's argument that 90% of the class is uninjured by finding that "owning or residing in a house that is invaded by noxious or harmful levels of smoke negligently released from a fire is a cognizable injury." The circuit court once again failed to examine any of the essential elements of the causes of action and failed to discuss whether those elements are capable of individualized or even generalized proof. The circuit court's sole focus was on property damages, and it neglected to take into account any potential issues with the personal injury claims. Accordingly, the circuit court failed

28

to thoroughly and appropriately determine whether the common issues predominate over individualized issues as required by Rule 23(b)(3).

Furthermore, Rule 23(b)(3) also requires a showing "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." As we previously have explained,

> [u]nder the superiority test, a trial court must "compare [ ] the class action with other potential methods of litigation." Cleckley, Davis, & Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 23(b)(3)[2][b], at 554 (footnote omitted). *See also Nolan v. Reliant Equity Investors, LLC*, No. 3:08–CV–62, 2009 WL 2461008, at *4 (N.D. W. Va. Aug. 10, 2009) ("Superiority requires that a class action be superior to other methods for the fair and efficient adjudication of the controversy." (quotations and citations omitted)); *In re West Virginia Rezulin Litig.*, 214 W. Va. at 75, 585 S.E.2d at 75 (stating that superiority "requirement focuses upon a comparison of available alternatives").
>
> "Factors that have proven relevant in the superiority determination include the size of the class, anticipated recovery, fairness, efficiency, complexity of the issues and social concerns involved in the case." Cleckley, Davis, & Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 23(b)(3)[2][b], at 554 (footnote omitted). In addition, this Court has observed that consideration must be given to the purposes of Rule 23, "'including: conserving time, effort and expense; providing a forum for small claimants; and deterring illegal activities.'" *In re West Virginia Rezulin Litig.*, 214 W. Va. at 76, 585 S.E.2d at 76 (quoting 2 Conte & Newberg, *Newberg on Class Actions* § 4:32, at 277-78).

*Perrine*, 225 W. Va. at 527, 694 S.E.2d at 860. In the instant matter, the circuit court's main analysis of the Rule 23(b)(3) superiority requirement is as follows:

29

> The class action mechanism is ideally suited for resolving these matters. Class certification promotes efficiency and uniformity of judgment, among other reasons, because the many Class Members will not be forced to separately pursue claims arising from the same incident, which might lead to inconsistent verdicts. The Court specifically finds that the class action mechanism is superior to any available mechanisms for aggregating many individual claims, including before the West Virginia Mass Litigation Panel, because the damages suffered by most class members are too small to warrant the associated costs of pursuing such cases, such as basic filing fees, deposition fees, attorney time in processing, and expert witness fees.

As discussed herein, in the "Conclusions of Law" section of the circuit court's order, the court did provide slightly more discussion that was intertwined with predominance. However, as noted above, this discussion was conclusory in that it listed cases where class certification was found to be appropriate in mass accident cases without giving any explanation as to why those particular cases fit the facts of this matter. There is no substantive analysis as to the other factors that this Court has stated should be considered. As such, we find that the circuit court failed to make a thorough analysis of the superiority requirement of Rule 23(b)(3) as well.[14]

---

[14] We further note that the circuit court's order regarding other Rule 23(a) requirements is also insufficient. For example, the order is woefully inadequate regarding the Rule 23 adequacy of representation requirement, despite the fact that Surnaik contested the credibility of the class representative below due to certain alleged racist and political remarks he made on social media. *See* Rule 23. Class Actions, 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 23 ("Rule 23(a)(4) also considers whether the proposed representative has the interest and the ability to adequately prosecute the action. . . . Courts may also consider whether the proposed class representative is disqualified because of issues regarding the person's credibility or trustworthiness." (footnotes omitted)).

Furthermore, as noted in the foregoing discussion, a circuit court's failure to engage in the requisite thorough analysis of the Rule 23(a) requirements and to make detailed and specific findings to support the court's certification determination constitutes clear error. *Accord State ex rel. Mun. Water Works v. Swope*, 242 W. Va. 258, 268, 835 S.E.2d 122, 132 (2019); *State ex rel. W. Va. Univ. Hosps., Inc. v. Gaujot*, 242 W. Va. 54, 62, 829 S.E.2d 54, 62 (2019); *Chemtall*, 216 W. Va. at 454, 607 S.E.2d at 783. Such failure "is also an abuse of discretion. The circuit court must approach certification decisions in a conscientious, careful, and methodical fashion." *W. Va. Univ. Hosps.*, 242 W. Va. at 62, 829 S.E.2d at 62 (internal quotations and citations omitted). We find that the same standard should logically extend to a court's failure to conduct a thorough analysis pursuant to Rule 23(b). Accordingly, we hold a circuit court's failure to conduct a thorough analysis of the requirements for class certification pursuant to West Virginia Rules of Civil Procedure 23(a) and/or 23(b) amounts to clear error. Because the circuit court failed to conduct a thorough analysis of the class certification requirements under both Rules 23(a) and 23(b), we find the court's ruling certifying the class to be clearly erroneous. Therefore, we grant as moulded the requested writ of prohibition and vacate the circuit court's class certification order.[15]

---

[15] Because we grant the writ as moulded and vacate the circuit court's order, we need not consider any other grounds raised by Surnaik.

31

## IV.

## CONCLUSION

For the foregoing reasons, we conclude that the circuit court has exceeded its legitimate powers by certifying the class while failing to undertake a thorough analysis in its determination of whether the class certification requirements of Rule 23 of the West Virginia Rules of Civil Procedure were satisfied. Accordingly, Surnaik's writ of prohibition is granted as moulded, and the circuit court's order granting class certification is vacated.

Writ granted as moulded.